| 13 | 451 |
| 29 | 31 |
| 13 | 451 |
| 39 | 172 |
| 13 | 451 |
| f53 | 089 |

## COUNTY COMMISSIONERS OF COLUMBIA COUNTY vs. CHARLES R. KING, TRUSTEE.

1. Where a duty is imperatively required by law to be performed by ministerial officers, as the levying of a specific tax, no demand is necessary to lay the foundation of an application for a writ of *mandamus* to enforce it.

2. The 22d section of the act known as the Internal Improvement Act authorized Boards of County Commissioners to subscribe for stock in railroad companies, and to issue bonds, bearing interest, for the purpose of paying the subscription, and requires the commissioners to levy an annual tax to meet the interest as it becomes due. The county of Columbia, in 1855, subscribed for such stock, and issued its bonds. Simultaneously, the Supreme Court of the State, in a case before it involving the validity of the law, pronounced it constitutional, and the county continued the issuing of its bonds until the whole amount authorized was issued: *Held*, That upon application for a writ of *mandamus* against the commissioners to compel the levy of a tax to pay the interest, by a *bona fide* holder of coupons representing the interest due upon these bonds, they having been issued under the sanction of the highest judicial authority of the State, and the acquiescence of the people of the county, it is too late to question the constitutionality of the law

and the validity of the bonds in the hands of a *bona fide* holder, and that a judgment of the court now, declaring the law unconstitutional, would not affect the bonds heretofore so issued, but would operate only upon the future.

3. The compounding of interest is not *usurious* under the laws of this State, which limited the rate of interest.

4. Coupons representing the interest of county bonds were issued by the County Commissioners, signed " S. L. Niblack," without an official designation, but it appearing that they were in fact regularly issued: *Held*, that the county was liable upon them.

5. *Mandamus* is the proper, because the only efficient remedy to enforce the collection of taxes to satisfy the interest due on the bonds of a county, such bonds having been issued under a law requiring the levying of a tax for that purpose, and may be resorted to without first obtaining judgment, and the court has the power to ascertain the amount of the coupons, without the intervention of a jury.

6. Bonds were issued by Columbia county, and afterwards a portion of her territory was detached and formed into new counties, and provision was made in the act of separation that the new counties should compensate the county of Columbia according to the relative and *pro rata* assessed valuation of the property in the territory detached: *Held*, That it is not necessary or practicable to make the new counties parties in a proceeding against Columbia county to enforce collection of the bonds.

7. Severing a portion of the territory of a county by act of the Legislature, and the freeing of slaves by the sovereign power of the State, thus lessening the aggregate value of the taxable property in a county, do not constitute a taking of " private property for public use without just compensation."

8. Bonds issued for the purpose of paying a subscription for railroad stock are not a lien, under the 22d section of the Internal Improvement Act, upon the stock so purchased.

9. The laws in force at the time of making a contract, and in pursuance of which the contract is made, enter into and form a part of the contract, as if they were incorporated into it, including those which affect its validity, construction, discharge, and enforcement; and when a county issues its bonds under a statute which provides the time and manner of discharging them, as by levying an annual tax, the Legislature cannot, by repealing the act or changing it, limit the amount of taxes to be levied to a rate insufficient to raise the amount necessary to meet the obligation, unless other adequate means are provided. Such a law impairs the obligation of the contract.

10. The court is not authorized (in a proceeding by. *mandamus* against a county to enforce the collection of a tax to meet the interest coupons of

the bonds issued by the county,) to direct the collection of interest upon the coupons. The law under which the bonds were issued, requiring the County Commissioners to levy and collect a sum sufficient to meet the interest on the bonds, the court, by *mandamus*, will only direct them to do what the law required them to do.

11. A peremptory writ of *mandamus* is not amendable. Its mandate must correspond with that of the alternative writ, and if that be defective, or claim too much, it may be amended.

Appeal from the Circuit Court for Columbia county.

Charles R. King, trustee, presented to the Circuit Court of Columbia county his petition for an alternative writ of *mandamus*, to be directed to Abel J. Hutchinson and others, composing the board of County Commissioners of Columbia county, and to their successors in office, commanding them to proceed to levy and collect a tax upon the property and persons within said county to pay certain instalments of interest alleged to be due to the petitioner upon the coupons in his hands, which coupons represent the interest due upon bonds issued by the county, or to show cause why they should not do so.

The petitioner alleges that the county of Columbia is indebted to him in the sum of eighteen hundred dollars, being the amount of certain coupons, copies of which are annexed, and the further sum of three hundred and twenty-one dollars of interest accrued upon said coupons, which he had demanded and the county refused to pay. That in 1853 the Legislature of Florida by law incorporated the Florida, Atlantic and Gulf Central Railroad Company, with capital stock to be divided into shares of one hundred dollars each. That in 1855 the Legislature passed a law entitled " An act to provide for and encourage a liberal system of internal improvements in this State," wherein, by section 22 of said act, the Boards of County Commissioners of certain counties through which the railroad might pass, of which Columbia county was one, were authorized to subscribe for and hold stock in said company, with the approval of the voters of said counties, upon the same terms as other stockholders,

and to issue bonds of such county, payable, with interest, at such times and places as they may deem proper, and dispose of the same for the payment of such subscription, pledging the faith and resources of such county for the payment of such bonds and interest, and that they should from time to time levy and collect such a tax as shall be necessary to pay the instalments of interest and the bonds as they become due, or to create a sinking fund for the gradual reduction of the same, the rate of interest not to exceed ten per cent. per annum, and the receipt for the payment of such tax shall entitle the tax-payer to one share of stock for every hundred dollars of taxes paid, of the stock so subscribed for by the County Commissioners, which receipts are assignable, and no stock held by the county shall be assignable, except in exchange for the bonds, until the bonds shall be paid. That in September, 1855, the question whether the county of Columbia should subscribe for stock was submitted to a vote of the legal voters, and a majority of votes being in favor of such subscription, the commissioners subscribed for and took one thousand shares of the stock in said railroad company, and in payment of such subscription issued the bonds of the county to the amount of one hundred thousand dollars, bearing interest at eight per cent. per annum, payable semi-annually on the first days of January and July in each year, which bonds were respectively dated and issued between the first of January, 1856, and 1860. That the bonds had coupons annexed representing the half-yearly interest, payable to bearer, at the city of New York, signed by S. L. Niblack, who was the President of the Board of County Commissioners, each coupon being numbered to correspond with the number of the bond. That petitioner is the *bona fide* holder of coupons to the amount of $1,800, long past due, payment whereof he demanded, according to their tenor and effect, and the same remain due and unpaid, and the County Commissioners have failed to levy and collect

the tax as required by law, wherefore he prays the writ of *mandamus*, &c.

The following is the form of the coupons:

" Florida, Atlantic and Gulf Central Railroad Stock.— The county of Columbia, Florida, will pay the bearer, on the 1st of January, 186—, at their agency in the city of New York, —— dollars, being six months' interest on their bond, No. —. Signed, S. L. Niblack."

An alternative writ was issued, returnable on the 1st day of August, 1869, directed to the members of the Board of County Commissioners, commanding them to proceed, as a Board of County Commissioners, to levy and collect the amount so due the petitioner, to wit : $1,800, the amount of the coupons, and $324 interest which has accrued thereon since the coupons became due, or to show cause, &c.

The commissioners made return to the alternative writ, insisting :

1. That they were entitled to notice of the filing of the petition before the issuing of the writ, and

2. That the writ was issued in behalf of Charles R. King individually, and not as trustee, as named in the petition.

3. They admit that the bonds and coupons were issued as alleged.

4. They insist that the 22d section of the Internal Improvement Act, approved January 6, 1855, is unconstitutional and void, and that consequently the bonds issued were unauthorized and not binding upon the county.

5. That the issuing of the coupons was not authorized by law, and that the issuing thereof is compounding the interest, in violation of law.

6. That the indebtedness for interest is unliquidated in its nature, and can only be ascertained by bringing suit upon the bonds ; that a *mandamus* can only be authorized after judgment recovered ; that, in proceedings by *mandamus*, there is no power in the court to ascertain the amount due.

7. That the coupons do not purport to bind the county, but only S. L. Niblack.

8. That the Legislature has annulled and abrogated the contract between the county and the bondholders, by disrobing Columbia county without her consent of one-half her territory, in creating new counties from the territory composing the county at the time of the issuing of the bonds, and by the action of the national government and of the people of the State in abolishing slavery, and they insist that the bonds and coupons cannot be collected until compensation be made by the State, and that the redress of the relator must be had from the State.

9. That the Commissioners of Columbia county possess no legal power to assess and collect taxes beyond the boundaries of the county as now constituted, the property in the new counties taken from her territory having been liable to contribute to the payment of the bonds, and the new counties of Suwannee, Baker and Bradford should have been made parties.

10. That the commissioners exceeded their power in issuing the coupons, and that the demand should have been made upon the bonds for the payment of the interest, and not upon the coupons.

11. That the 8th section of article XII of the constitution prohibits the levying of taxes upon persons for paying the interest on any bonds issued by counties for the benefit of any chartered company, and that thereby the County Commissioners have no right to levy or collect a tax to pay these bonds and interest.

12. That the State has abrogated the contract of the county in this, that the county could not assign the stock until the bonds were paid, or in exchange for the bonds, thereby giving a lien to the bondholders upon the stock for the payment of the bonds and interest, and the trustees of the internal improvement fund, without process of law, have sold the railroad and its franchises, thereby depriving the

county, as a stockholder, of its property and means of relieving itself of this indebtedness.

These are substantially the propositions set forth in the return and answer of the respondents.

The court adjudged that the return was insufficient, and directed the issuing of a peremptory *mandamus*, whereupon the respondents appealed.

*R. W. Broome* and *S. L. Niblack* for Appellants.

We present the following law points as bearing on this cause and applicable :

A demand and a refusal to perform, is a pre-requisite to obtaining a writ of *mandamus*. Whea. Selwyn, 1093-4 ; Tapping on Mandamus, 71, 72, 73, 81, 368, 369.

The 22d section of the "Internal Improvement Act" grants to county organizations the power to issue bonds, which is clearly in violation of the fundamental law. Sec. 4, Art. VIII, Const. '39 ; 6 Fla., 610, and dissenting opinion, and references therein ; 3 Peters' Dig., 556 ; Thomp. Dig., Restrictions on Power of General Assembly, p. 46.

We hold and contend that claiming interest on interest is in violation of then existing laws on usury. Thomp. Dig., 234-5.

We hold and contend that the books of a corporation are the best evidences of its acts, and when a fact is disputed, there must be some testimony to prove which is correct as to facts. 4 Wheat.

When an amount in excess of the face of a written obligation is claimed and disputed, it should be determined in a proper manner and in a proper action. We hardly think this will be denied.

A *mandamus* cannot lie in this case until after judgment at law and a refusal to pay the same. 4 Barb. Rep., 64 ; 28 Casey, 108.

A common law judge cannot determine an amount due

30

on a disputed claim save by consent, except through the intervention of a jury, as prescribed by law.

The Legislature cannot divest parties to a contract of their obligations, except by the consent of all interested; therefore, the new counties should be made parties respondents to the action. 22d sec. "Internal Improvement Act;" Acts 1858, p. 37.

The pleading shows that without the consent of Columbia county, as now constituted, these new counties have attempted to divest themselves of their bounden obligations.

The State cannot take private property for public use without first rendering just compensation. 2 Peter's Dig., 555, 559; 2 Peters, 256; 18 Wend., 56.

In this case, it is giving aid to a monopoly in violation of constitutional law then in force. Art. 1, Sec. 4 Const., and authorities above.

Where, by law, a lien is created before an indebtedness is contracted, and the holder of the indebtedness takes it subject to that lien and accepts it, the lien must be first absorbed before he can go to other means to realize his indebtedness. Sec. 22 "Int. Imp't Act."

When a county is limited by law in its taxes, it cannot go beyond that limit. Thomp. Dig., 99; Act 1869.

The pleadings show that by section 8 of article XII of the constitution of 1868, the County Commissioners are forbidden to levy such a tax as is here sought to be collected: and, also, that negro slaves being the basis of the indebtedness, by article XVI, section 26, there is a failure of consideration.

The errors not mentioned are substantially embodied in the foregoing, save that counsel holds and contends that, in this particular instance, the 22d section of "Internal Improvement Act" is unconstitutional, and null and void. Thomp. Dig., Restrictions on Powers of the General Assembly, p. 46-7. And as additional authorities, they offer Bov. Law Dic., heading "County Corporate" and "Cor-

poration;" Act of Assembly 1858, p. 37; Whea. Selwyn, 1093–4, note 2, and authorities; Tapping on Mandamus, 61, 62, 63, 68, 71, 72, 73, 81, 368–9; Bill of Rights, Const. 1839 and 1868; 1 Kent's Com., 252; Secs. 1, 2, 3 and 4 of Art. VIII Const. 1839 and 1868; Sec. 13 of Art. XIII Const. 1839; 3 Peter's Dig., 555, 559; 6 Fla., 610, and references in same.

*J. J. Finley* and *Wm. Bryson* for Appellee.

*Wm. Bryson* for Appellee.

Notice of filing a petition for alternative writ of *mandamus* is not necessary. Moses on Mandamus, 203; 2 Redfield on Railways, 258, sec. 2, 5.

The 22d section of the Internal Improvement Law of 1855 is constitutional. 6 Fla., 610; 10 Fla., 112, 238.

The doctrine of these decisions has been sanctioned by the highest courts of at least sixteen States, and by the Supreme Court of the United States. 21 How., 539, 545; 1 Black, 386; 1 Wallace, 83, 175, 202, 291, 384; 3 ib., 327; 5 ib., 194, 705, 772.

Suit upon the bonds is unnecessary in this class of cases. The amount to be paid is named in the coupons, and the intervention of a jury to assess damages is not required. Moses on Mandamus, 102 to 108; 6 Ohio, (State,) 280; 2 Metcalf, 56, and cases last above cited.

It is contended that the coupons do not purport to bind the county, but one S. L. Niblack. The coupons were attached to the bonds issued by authority of the county, and are referred to in the bonds as representing the interest thereof. The form is of no consequence.

It is said that since the issuing of the bonds, the State has reduced the territory of the county, creating new counties out of the former, and destroyed the slave property, thus reducing the means of paying, and in effect abrogating the contract. We reply, that the acts of the Legislature pro-

vided for the reimbursement of Columbia county by the new counties made from her territory, and the contract cannot be abrogated without the consent of the other party thereto, viz: the holder of the bonds. Laws of 1853, p. 9, sec. 22; Laws 1859, p. 37, 59; Laws 1860, p. 59, 179; 4 Wallace, 535; 5 ib., 772; 6 Fla., 610; 6 Cranch, 87, 137, 144; 2 Story on Const., 270.

It is claimed that demand should have been made for the payment of interest, and not on the coupons. We answer by citing Moses on Mandamus, 102 to 108; 6 O. S.; 2 Metcalf; 21 Howard; 1 Black, and 1 Wallace, before cited.

The 8th section of article XII of the constitution of 1868, providing that no tax shall be levied on *persons* for the benefit of corporations or for the payment of interest on bonds issued by chartered corporations, cannot apply. The tax sought to be levied is upon property, not upon persons, and the bonds are not issued by chartered companies.

There is no law giving the bondholders a lien upon the stock of the railroad issued by the county. On the other hand, the county is authorized to sell the stock, by express legislation. Acts of 1855, 1860, 1866.

The law expressly required the County Commissioners to levy a tax for a specific purpose. They have neglected this duty, and *mandamus* is the appropriate remedy to compel officers to perform their duties.

HART, J., being interested in the question, did not sit in the case.

RANDALL, C. J., delivered the opinion of the Court.

The appellants assign the following errors, which are treated of in their order:

I. " That the court erred in deciding that no demand to pay the coupons was necessary to obtain the writ of mandamus."

We have in the record before us only the petition, the re-

County Commissioners Columbia Co. vs. King—Opinion of Court.

turn, and the judgment of the court. There is no bill of exceptions showing what took place at the trial, and we can only know what were the rulings of the court by necessary inference from what appears in the record. The petition alleges that a demand was made according to the tenor and effect of the coupons, and the county refused to pay. The return does not deny this, but proposes to excuse the board of commissioners by showing that they ought not to pay. But certainly, in a case of this character, where a duty is imperatively required by law, and the thing to be done must be as well known to the board as to the holders of the bonds and coupons, no demand can be necessary to lay a foundation for compelling the performance of the duty ; a neglect or refusal to perform, showing an intention not to do the act required is sufficient. 3 Stephens, N. P., 2,292 ; Redfield on Railways, 441, note 5 ; the State of Ohio vs. Com's. of Clinton county, 6 O. S. Rep., 280. The provisions of section 22 of the Internal Improvement act are mandatory to the county commissioners to levy and collect a tax to meet the instalments of interest as they become due.

II. " The court erred in deciding the 22d section of the Internal Improvement act to be unconstitutional."

The appellants insist that the 22d section of " an act to provide for and encourage a liberal system of Internal Improvements in this State," is unconstitutional, and hence, that the bonds issued are void and created no indebtedness against the county, because, they claim, the act authorizing counties to subscribe for stock and become stockholders in a railroad company by issuing bonds and levying taxes to pay the same, is in conflict with section 4, article 8, of the constitution of this State, which provides that " The General Assembly shall have power to authorize the several counties and incorporated towns to impose taxes for county and corporation purposes respectively, and all property shall be taxed upon the principles established in regard to State taxation."

We cannot regard this as an open question with reference to these bonds at the present time. The Supreme Court of this State in January term, 1856, in the case of Cotten, et al. vs. The Co. Com's. of Leon county, 6 Fla., 610, had before it and passed upon the precise question. That was a case of a bill filed to enjoin the commissioners of Leon county from levying and collecting a tax to pay an instalment of stock subscribed by the county in the Pensacola and Georgia Railroad company, under the authority of the same act. That case, judging from the high character of the circuit judge before whom it was commenced, of the judges of the Supreme Court, and of the respective counsel on either side, must have been thoroughly argued and considered in all its aspects. It is true, that one of the able judges dissented from the opinion of the court on that occasion, and he puts his reasons for dissenting from the majority of the court with much force and considerable emphasis. As an original proposition, in view of the want of unanimity in that decision, we might be expected to enter into a discussion of the questions involved, and if we should arrive at a conclusion differing with that of the majority of the court, we should yet be confronted by the almost unanimous concurrence of the courts of last resort in all the States of the Union, where the question has been adjudicated in the same direction, under constitutional provisions essentially like our own.

It is also proper to observe that the case of Cotten vs. the Commissioners of Leon county, was pending if not already decided by the Supreme Court, at the very moment that the earliest of the bonds of Columbia county were being issued, and they thus went forth upon the market and into the hands of third parties, not only sanctioned by the Legislature, but by the Judicial branch of the government, and thus they were treated and accepted by the world as having the very highest and strongest indorsement as to their validity, and the decision of the court in that case seems to have been acquiesced in by the people of the various counties, who were

then about issuing their bonds under the same law and for the same purposes; and it does not appear that any steps were taken to enjoin the *issuing* of any of the bonds then about to be issued by the several counties, Columbia being one of them.

In the case of Gelpcke vs. city of Dubuque, 1 Wallace, (U. S.) 175, was involved a similar question. Article 8, section 2, of the constitution of Iowa reads thus: " Corporations shall not be created in this State by special laws, except for political or *municipal purposes.*" \* \* \* The Legislature created the corporation of the city of Dubuque for *municipal purposes*, and afterwards passed a law authorizing the city to aid in the construction of the Dubuque Western, and the Dubuque, St. Peters and St. Paul railroads by issuing to each $250,000 of city bonds in pursuance of a previous vote of the citizens; and the city council was authorized and required to levy a special tax to meet the principal and interest. Mr. Justice Swayne delivered the opinion of the court, which was concurred in by all the Justices except one. The court say, " when a corporation has power under any circumstances to issue negotiable securities, the *bona fide* holder has a right to presume they were issued under the circumstances which give the requisite authority, and they are no more liable to be impeached for any informality in the hands of such a holder than any other commercial paper." It was insisted, under the provisions of the constitution of Iowa, that the general grant of power to the Legislature did not warrant it in conferring upon municipal corporations the power which was exercised by the city of Dubuque in this case; and that the 8th article forbids the conferring of such power upon municipal corporations by special laws. All these objections, the court say, have been fully considered and repeatedly overruled by the Supreme Court of Iowa. 4 Greene, 1; 4 ib., 328; 5 Iowa, 15; 6 ib.; 265, 304, 393; 8 ib., 193; 10 ib., 157.) " The earliest of these cases was decided in 1853, and the latest in 1859, and

the bonds were issued and put upon the market between the periods named. These adjudications cover the entire ground of this controversy. They exhaust the argument upon the subject; we could add nothing to what they contain. We shall be governed by them unless there be something which takes the case out of the established rule of this court upon that subject. It is urged that all these decisions have been overruled by the Supreme Court of Iowa in the later case of the State of Iowa vs. the county of Wapello; 13 Iowa, 390. * * It cannot be expected that this court will follow every such oscillation, from whatever cause arising, that may possibly occur. *The earlier decisions*, we think, *are sustained by reason and authority.* They are in harmony with the adjudications of sixteen States of the Union. Many of the cases in the other States are marked by the profoundest legal ability. The late case in Iowa, and two other cases of a kindred character in another State, also overruling earlier adjudications, stand out, as far as we are advised, in unenviable notoriety. However we may regard the late case in Iowa as affecting the *future*, it can have no effect upon the *past.*" As was said in the case of the The Ohio Life and Trust Co. vs. Debolt, 16 Howard, 432: "The sound and true rule is, that if the contract when made was valid by the laws of the State, as then expounded by all the departments of the government and administered in its courts of justice, its validity and obligation cannot be impaired by any subsequent legislation or decision of its courts altering the construction of the law." "The same principle applies where there is a change of judicial decision as to the constitutional power of the legislature to enact the law. * * It rests upon the plainest principles of justice. To hold otherwise, would be as unjust as to hold that rights acquired under a statute may be lost by its repeal."

This decision was affirmed in Meyer vs. City of Muscatine, 1 Wallace, 384, Thompson vs. Lee County, 3 ib., 327; and the court in Com'ns of Knox county vs. Aspinwall, 21 How.,

545, where it was questioned whether bonds of the county, already issued, had been authorized by the necessary preliminary vote of the people, says, "We do not say that the decision of the Board would be conclusive in a direct proceeding to inquire into the facts previously to the execution of the power, and before the rights and interests of third parties had attached; but after the authority has been executed, the stock subscribed, and the bonds issued and in the hands of innocent holders, it would be too late, even in a direct proceeding, to call it in question, much less can it be called in question to the prejudice of a *bona fide* holder of the bonds in this collateral way." The suit was brought upon coupons.

Many similar cases have been decided by the Supreme Court of the United States, and the ruling has been uniform.

Whatever, therefore, might have been the opinions of the members of this court upon the question of the constitutionality of the law referred to, the fact that the bonds were issued and passed to the hands of third parties long years ago, that they were sanctioned by the judicial department of the government, and by the acquiesence of the people, it would be an outrage upon public justice, public credit, and the rights of the holders for value of these bonds now to step in and nullify the solemn adjudication of the highest court of this State, given when these bonds were about being issued, and upon the faith of which they were sold for the means used to promote an important public enterprise, and intended to develope and enhance the prosperity and value of property of the citizens of the State.

III. The appellants say, "The court erred in deciding that the interest alleged to be due on the coupons, which are simply the representatives of the interest due on the bonds, and which interest is here sought to be collected, was not, and is not in violation of the usury laws of the State at the time."

We cannot see that the interest represented by the cou-

pons, adding thereto the lawful rate of interest upon the coupons when due, gives a greater rate of interest upon the bonds than was authorized by the law under which they were issued. The act provides that the rate of interest shall not exceed ten per cent. The bonds bear eight per cent. Interest upon the eight per cent. when due, added thereto, does not reach ten per cent. upon the bonds. There is, therefore, no " usury" in the allowance of this interest. Usury is defined to be the taking, or agreement for, a greater rate for the use or forbearance of money loaned, than is allowed by law. The act fixed the limit in the case of these bonds at ten per cent. per annum, and therefore the general law fixing the rate of interest did not affect the bonds. The interest upon the coupons, however, if allowed, should be at the rate established by the general law in force when the contract was made at the place where the contract was to be performed. But this subject of interest is treated in another aspect in a subsequent part of this opinion.

IV. " That the court erred in deciding that Columbia county was bound by these coupons, they being signed by S. L. Niblack, in his individual capacity, no testimony or evidence being before the court that they were signed for and in behalf of Columbia county, except the indefinite assertions of the petition, which are fully denied by the sworn return."

We understand, however, that not only does the petition allege, but that the return admits that the coupons, copies of which are annexed to the petition, were issued annexed to the bonds, and represented the interest to accrue upon the bonds. The body of the bonds refers to the annexed coupons as representing the interest which was payable " on presentation of the coupons." The court in Thompson vs. Lee county, 3 Wallace, says, " Bonds with coupons payable to bearer are negotiable securities, and pass by delivery, and have all the qualities and incidents of commercial paper. It is not necessary that the holder of coupons, in order to recover

on them, should own the bonds from which they are detached. The coupons are drawn so that they can be separated from the bonds, and like the bonds, are negotiable, and the owner of them can sue without the production of the bonds to which they were attached, or without being interested in them;" and in the Com'ns of Knox county vs. Wallace, 51 Howard, which was a suit upon coupons, and where the question was made that the suit could not be maintained upon the coupons without the production of the bonds to which they were attached, holds similar language, and this case is subsequently referred to by the Supreme Court as a leading case, settling that question. Mercer county vs. Hacket, 1 Wallace, 83, treats of the question of the negotiability of this kind of bonds more fully and emphatically, and says that these securities are treated as negotiable by the commercial usages of the whole civilized world, and have received the sanctions of judicial recognition, not only in this court, but of nearly every State in the Union, is well known and admitted.

V. " That the court erred in deciding that the indebtedness shown by the coupons is liquidated in its nature, and in deciding that there is not a proper and correct remedy to enforce the collection of these coupons, at least to judgment at common law, otherwise than by mandamus; and in deciding that the power exists in this Circuit Court in such cases to ascertain the amount due on the coupons."

According to elementary authorities, mandamus would be the only proper, because the only *specific* and *efficient* remedy in such cases. It is not pretended that even if judgment were recovered against the county, the petitioner would be any nearer to the accomplishment of his purpose than he is now, because there is probably no property of the county liable to levy and sale upon execution. A judgment may go against the county, and yet the proceeding by mandamus must be resorted to to compel the Commissioners to levy and

collect the amount, including interest and costs, unless they should then proceed without this compulsory process.

The law directs the commissioners to collect the amount of interest as it becomes due. We see no necessity for resorting to suit to ascertain the amount. It is merely a question of simple mathematics. Questions of law and of fact may be adjudicated in this form of proceeding, and grave constitutional questions and questions of fact of the highest import are constantly tried by this summary and extraordinary remedy whenever they are put in issue, as is shown in the cases already cited from the highest judicial tribunal in the nation. It is a high prerogative writ, and is awarded only in cases where there is a clear legal right and the party has no other *adequate remedy* as against the same party. Here the statute directs the County Commissioners to proceed to do a specific thing, to-wit : to levy a tax and collect it. The amount is as well known to them through their own records as it would be by means of the judgment of a court. It is a duty required of them in their official character. They are not personally liable for the indebtedness, but may be punished for neglecting to obey the process of the law after being commanded to obey, and the law does not contemplate satisfaction in other manner than by the levy and collection of a tax and the payment of the money when so collected. A judgment would only affirm a *right* already established—the *remedy* is something more. It is the satisfaction of the right or claim already fixed, the *legal* obligation only being disputed.

Judge Bronson, in McCullough vs. The Mayor of Brooklyn, 23 Wend., 458, says that " although, as a general rule, a *mandamus* will not lie where the party has another remedy, it is not universally true in relation to corporations and ministerial officers. Notwithstanding they may be liable to an action on the case for neglect of duty, they may be compelled by *mandamus* to exercise their functions according to law." The opinion of the Supreme Court of Pennsylvania,

in The Commonwealth vs. The Select and Common Council of Pittsburgh, composed of D. F. and others, 34 Penn., 496, covers the whole ground.

After stating a case similar to the present in its main features, Judge Strong, in delivering the opinion of the court, says: "We shall spend no time in endeavoring to prove what is apparent upon the face of this statement of facts, that it presents a fit case for a *mandamus*. Here is a clear legal right in the relator, a corresponding duty in the defendants, and a want of any other adequate and specific remedy. No action at law would lie at the suit of the relator against the defendants for not making provision for the payment of the interest, for not levying and collecting a tax, which is the thing sought to be accomplished by this writ. That an action might be brought against the city upon the bonds themselves is true, but that is not the right here asserted, nor would it enforce the duty alleged. The liability of the city to pay the bonds is one thing, the duty of the councils to make provision for their payment is quite another. The City Councils are public bodies, and the members of the councils are public officers. Nothing is better settled than that *mandamus* is the appropriate writ by which the commonwealth compels the performance of a public duty. The propriety of this form of remedy, for such a case as this relator presents, was fully vindicated in Thomas vs. Commissioners of Alleghaney County, 8 Casey, 218, and both English and American authorities were referred to in support of its use. Cases are numerous in which the writ has been sustained to enforce the levy and collection of a tax." Queen vs. The Wardens of St. Savior, 7 Ad. & Ellis, 925 ; Queen vs. The Select Vestrymen of St. Margaret, 8 Ad. & Ellis, 889 ; Queen vs. Thomas, 3 Com. Bench, 589 ; Tapping on Mandamus, 67, and Moses on Mandamus, 102 to 123, and numerous cases collected, fully sustain these positions.

VI. " That the court erred in refusing to make the Coun-

470 SUPREME COURT.

County Commissioners Columbia Co. vs. King—Opinion of Court.

ty Commissioners of Suwannee, Bradford and Baker counties parties to the proceeding," and

VII. "In giving its great power to enforce the collection of these coupons, because the State, without rendering just compensation, took from Columbia county over one-half her territory and all her slaves, which property, by a contract with the State, was pledged to pay this indebtedness now sought to be collected in this proceeding."

It does not appear that any effort was made in the Circuit Court to cause the commissioners of Suwannee and the other counties to be made parties, and that the court refused. But it is not considered that it was necessary, even if it were demanded by the appellants. One writ of *mandamus* could properly go against the officers of but one county. These bonds were issued by the officers of Columbia county. The relator holds the obligation of that county, and has no direct legal claim against the new counties.

"Public corporations are such as are created by the government for political purposes, as counties, cities, towns and villages; they are invested with subordinate legislative powers, to be exercised for local purposes connected with the public good, and such powers are subject to the control of the Legislature of the State." 2 Kent's Com. Lecture, 33, p. 275. "In respect to public corporations, which exist only for public purposes, as counties, cities and towns, the Legislature, under proper limitations, have a right to change, modify, enlarge or restrain them. A public corporation, instituted for purposes connected with the administration of government, may be controlled by the Legislature, because a corporation is not a contract within the purview of the constitution of the United States." Ib., 305. "The right to establish, alter or abolish such corporations, seems to be a principle inherent in the very nature of the institutions themselves, since all mere municipal regulations must, from the nature of things, be subject to the absolute control of the government." Angel & Ames on Corp., sec. 31; Hooper

County Commissioners Columbia Co. vs. King—Opinion of Court.

vs. Emery, 14 Me., 377.   There is no question of the right of the Legislature to divide counties already established, and to form new counties out of portions of their territory.  38 Me., 41.

After the issuing of the bonds by the county of Columbia, the Legislature severed a part of her territory and created from it the counties of Suwannee and New River.  The name of the latter was subsequently changed to Bradford, and a portion of it set off into the new county of Baker.

In the division of Columbia county, (Laws of 1858, page 39,) it was provided that the commissioners of Columbia county should set apart and transfer to each of them so many shares of the capital stock of the Atlantic and Gulf Central Railroad Company as should be necessary to constitute a fair division between the three counties of the ten thousand shares of said stock held by Columbia county, to be determined by the amount of taxable property within the limits of each as appeared by the assessment made next preceding the transfer ; and that Suwannee and New River should, on making such transfer of stock, deliver to Columbia county bonds with coupons attached, to be made payable at periods corresponding with the bonds of Columbia county. And it was made the duty of the County Commissioners of Suwannee and New River, from time to time, to levy and collect such a tax as should be necessary to meet the interest and the bonds as they become due, and in case of failure of the new counties to collect the tax and pay the bonds and interest, then it should be done, as heretofore, by the assessor and collector of Columbia county.

It is, therefore, seen that the inhabitants and property taken from Columbia county were not relieved from their liability to pay their just proportion of the indebtedness of the old county of Columbia, and a means was provided for compelling payment of their share of it.   If they neglect or refuse, or if physical obstacles are interposed to prevent the execution of the law, the commissioners of Columbia have

the same right to appeal to the courts and compel obedience as other suitors.

The severance of a portion of the county did not relieve the county of Columbia from its indebtedness or any part of it, for upon general principles of law, as well as by judicial construction of statutes, if a part of the territory and inhabitants of a municipal corporation are separated from it, the remaining part retains all its property, powers, rights and privileges, and remains subject to all its obligations and duties, unless some express provision to the contrary should be made by the Legislature, (Hampshire vs. Franklin, 16 Mass., 86 ;) and it is within the province of the Legislature to provide for an equitable apportionment or enjoyment of property formerly held, or to impose upon each portion of the divided territory the payment of a share of the corporate debt, and if no such legislative provision be made, it has been held that upon the division the old municipality will be entitled to all the public property, and solely answerable for such liabilities. This was held by Parsons, C. J., in Windham vs. Portland, 4 Mass., 384, and in The Inhabitants of Yarmouth vs. Skillings, 45 Me., 133. To hold that by the division of her territory the county of Columbia was discharged from the obligation to pay a debt, would be to sanction an act of the Legislature impairing the obligation of contracts. The division of the county did not divest the county or its citizens of any of their property or rights, or relieve them of any of their obligations. Had this been the necessary effect of the act of the Legislature in dividing the county, the act would doubtless be treated as unconstitutional and void.

That the political action of the people of the State or of the government of the United States, or that the occurrence of a general commotion had the effect to abolish slavery and thus destroy a species of property hitherto recognized as valuable merchandise, and thus impoverish a large number of individuals to the extent and value of that property, cannot, upon

any recognized principle of law or equity, have the effect to relieve the community of their pecuniary obligations. As well may it be said that the misfortune of any business man in the destruction of his property would relieve him and discharge his liabilities, however much he might be embarrassed, and perhaps rendered unable to meet them. Nor do we perceive how the State can be substituted as the debtor, and liable to pay the debts of the county, by the action of the Legislature in changing her boundaries, or by the action of the people in destroying the element of property in a laborer.

VIII. " The court erred in permitting its power to be used to enforce the collection of this indebtedness out of the county until the one hundred thousand dollars of stock had been absorbed, that stock being by law reserved subject to a lien in favor of the bondholders."

We do not understand that this bonded indebtedness was a lien upon the stock. There was a provision in the law that the stock should not be assigned by the county until the bonds should be paid, except in exchange for such bonds. The county then was *authorized* to exchange the stock for the bonds, but the holders of the bonds had no lien thereon. The law provided that tax-payers should be entitled to stock in return for taxes paid, and if any lien existed, it was thus in favor of the tax-payer. The county, or the commissioners, were, *ipso jure*, trustees, holding the stock for those who should become entitled to it in the manner provided until the bonds should be discharged.

IX. " The court erred in deciding that the limit allowed by law for levying taxes for county purposes does not affect the tax to pay this peculiar indebtedness, and that this specific tax is outside and independent of other general taxes."

This is not a new question. These cases of the issuing of bonds by municipal corporations on railroad stock subscriptions have very uniformly resulted in the loss to the corporation of the stock subscribed for, and in an effort to evade

31

and defeat the collection of the bonds and the coupons, or interest warrants. In Van Hoffman vs. The City of Quincy, decided by the Supreme Court of the United States, (4 Wallace, 535,) a large number of cases are referred to of a similar character. That case was like the present, on a petition for a *mandamus* by the holder of coupons against the city of Quincy, Ill., which, when issued, were attached to bonds delivered in payment for the stock of railroad companies subscribed for by the city under acts of the Legislature of 1851 and 1853, by the provisions of which acts the city was authorized to collect an annual special tax to pay the interest on the bonds. The city failed to pay the coupons, and refused to levy the tax. In February, 1853, the Legislature passed a law providing that the taxes to be levied by the city should not exceed eighteen cents on the hundred dollars without the concurrence of a vote of the citizens, and not more than fifty cents in that event, and repealing all other laws authorizing the collection of taxes excep those regulating the manner of collection. The answer averred that the full amount of the tax authorized by this act had been assessed, and that the power had been exhausted, and that the fifty cents, when collected, would not be sufficient to pay the current expenses of the city, &c. The relator demurred to the answer, and the question presented was, whether the act of February, 1853, impaired the obligation of the contract, and was therefore void within the tenth section of the first article of the constitution, which prohibits any State from passing such an act, and whether, if it did so, a *mandamus* would lie against the city to compel it to levy a tax to pay the debt. The case was argued by counsel of eminence, and the briefs were exhaustive. After referring to the cases of Fletcher vs. Peck, 6 Cranch, 87, New Jersey vs. Wilson, 7 ib., 164, and Terret vs. Taylor, 9 ib., 43, the court remarks that " the principles which they maintain are now axiomatic in American jurisprudence, and are no longer open to controversy. It is also settled

TERMS HELD IN 1869–'70–'71.          475

County Commissioners Columbia Co. vs. King—Opinion of Court.

that the laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it as if they were expressly referred to and incorporated in its terms. This principle embraces alike those which affect its validity, construction, discharge and enforcement." The cases of Bronson vs. Kinzie, 1 How., 297, and McCracken vs. Hayward, 2 ib., 608, are referred to, where, subsequent to a contract, laws were passed providing that property mortgaged or levied on under execution should not be sold for less than two-thirds of its appraised value, and such acts, so far as they affected prior contracts, were held to be void. So in Sturgis vs. Crowninshield, 4 Wheat., 122, a State insolvent or bankrupt law was held inoperative as to prior contracts. "It cannot be doubted, either upon principle or authority, that each of such laws passed by a State would impair the obligation of the contract, and the last mentioned not less than the first. Nothing can be more material to the obligation than the means of enforcement. Without the remedy the contract may indeed, in the sense of the law, be said not to exist, and its obligation to fall within the class of those moral and social duties which depend for their fulfillment wholly upon the will of the individual. The ideas of validity and remedy are inseparable, and both are parts of the obligation, which is guaranteed by the constitution against invasion. The obligation of a contract is the law which binds the parties to perform their agreement. * * One of the tests that a contract has been impaired is, that its value has been diminished by legislation. It is not, by the constitution, to be impaired at all. This is not a question of degree or cause, but of encroaching, in any respect, on its obligation; dispensing with any part of its force." This rule is held not to be infringed by a repeal of laws for imprisonment for debt, nor by exempting from sale under execution necessary implements of agriculture, the tools of a mechanic, and articles of necessity in household furniture. It is said "regu-

lations of this description have. always been considered in every civilized community as properly belonging to the remedy, to be exercised by every sovereignty according to its own views of policy and humanity." 9 Peters, 359 ; 12 Wheaton, 230 ; 12 ib., 373 ; 4 ib., 200. "These doctrines, (say the court in Van Hoffman vs. City of Quincy,) rest in this court upon a foundation of authority too firm to be shaken, and they are supported by such an array of judicial names that it is hard for the mind not to feel constrained to believe they are correct. * * When the bonds were issued there were laws in force which authorized and required the collection of taxes sufficient in amount to meet the interest as it accrued, from time to time, upon the entire debt. But for the act of February 14, 1853, there would be no difficulty in enforcing them. The amount permitted to be collected by that act will be insufficient, and it is not certain that anything will be yielded applicable to that object. To the extent of the deficiency, the obligation of the contract will be impaired, and if there be nothing applicable, it may be regarded as annulled. A right without a remedy is as if it were not. * * It is clear that where a State has authorized a municipal corporation to contract and to exercise the power of local taxation to the extent necessary to meet its engagements, the power thus given cannot be withdrawn until the contract is satisfied. The State and the corporation are, in such cases, equally bound. The power given becomes a trust which the donor cannot annul, and which the donee is bound to execute, and neither the State nor the corporation can any more impair the obligation of the contract in this way than in any other. * * A different result would leave nothing of the contract but an abstract right of no practical value, and render the protection of the constitution a shadow and a delusion." See People vs. Bell, 10 Cal., 570 ; Dominic vs. Sayre, 3 Sand., 555 ; City of Galena vs. Amy, 5 Wallace, 705.

Upon the principle of these authorities, (and that they are

authoritative expositions of constitutional law no one can question,) we must hold that the act known as the Internal Improvement Act authorized the counties to levy and collect a tax sufficient to pay the interest annually accruing upon the bonds referred to, and to meet the principal of the bonds when due, or to create a sinking fund for that purpose, and to that end, if the law already in force did not authorize the collection of a sufficient amount, that act enlarged the power of the County Commissioners to that extent, and that any subsequent legislation restricting the amount to be raised, so far as it prevents the board from levying a sufficient amount, is inoperative with respect to the bonds and interest warrants in question.

We have thus disposed of the various questions raised upon the argument of this case, and we have been relieved of the responsibility of treating of the principle matters as original questions, finding as we do, in the reports of the decisions of the highest courts of the several States, and of the United States, that every important question raised has been repeatedly considered and decided, with scarcely a shade of difference in the views of learned judges.

It is idle to lament at this late day the rampant spirit of speculation which a few years ago busied itself with preying upon the credulity of the people everywhere ; painting glowing pictures of the golden flood of prosperity that was promised as sure to follow the speedy construction of railroads throughout the country ; of the safety of investment in them, of the certainty that they would not only in a brief period return the money invested, pay the interest and redeem the bonds issued, upon which the means were raised to construct them, and yield the holders of stock, who supposed they were in possession of that which would soon give verity to their dreams of opulence, a handsome income at trifling cost. The result almost every where has been uniform. Were the people even told that these promises were delusive, and that in the end they would be called upon to pay all that was

478　　　　　　SUPREME COURT.

County Commissioners Columbia Co. vs. King—Opinion of Court.

"nominated in the bond," it was not believed; and even if they were advised that the bonds were unauthorized and void in the law, they would have scorned the intimation that they would ever attempt to repudiate them; yet in the light of subsequent results and under the stress of multiplied misfortunes, with these debts forming dark clouds over their homesteads·and over the heads of their children, it is not strange that they seek to withdraw themselves from beneath the heavy burthen and to seek relief in any quarter where a ray of hope might present itself. Yet the Judiciary of the State would be liable to the charge of bad faith, if these bonds and the law were decided to be constitutional and binding before the transfer of them, and after their transfer in good faith, relying upon such adjudication and the acquiesence of the people, and when the railroad company had disastrously failed, and all hope of an efficacious recourse was gone, the decision should be altered and they should be pronounced unconstitutional and invalid.

The fact that the calculations of the benefits to be derived from the subscription were delusive, that the experiment was unfortunate, that the enthusiastic hopes cherished by the citizens as to the advantages contemplated have been blasted, may excite the sympathy of the country in their behalf, but they can constitute no excuse for a court of justice in refusing to administer the law alike to all persons, and at all times. No individual can be excused from the payment of his debt because the business in which he embarked has proved a failure. "The world is full of people involved in debt by reason of miscalculations or misfortunes in business. It is one of the certain penances for indebtedness contracted with good motives and apparently well grounded hopes, that the party indebted must, in case of adversity, practice prudence and economy, and wearily, but patiently, toil through years to extinguish it. It is matter of regret that the burthen of paying this debt in form of a tax falls upon the property of citizens with more than the weight of personal obligation,

yet this is the mode pointed out by the law, and the people have, through the Legislature and at the polls, imposed it upon themselves, and the consequences cannot be averted by the courts. In the progress of events, and with brighter times, better fortunes await them."

In the third ground assigned for error, the appellants make the point that the claim of interest upon the coupons is in violation of the usury laws. We could not arrive at that conclusion, as there was no usurious agreement at the time of issuing the bonds, the rate contracted for being within the law. Mr. Justice Swayne, in delivering the opinion of the court in Gelpcke vs. The city of Dubuque, cited *supra*, has this single suggestion in relation to interest upon coupons : "Bonds and coupons like these, by universal commercial usage and consent, have all the qualities of commercial paper. If the plaintiffs recover in this case, they will be entitled to the amount specified in the coupons, with interest and exchange as claimed." And he refers to White vs. the V. & M. R. R. Co., 21 How., 575, and Com'ns of Knox vs. Aspinwall, ib. 539, as authorities. The case of Gelpcke vs. city of Dubuque was an action against the city to recover the amount due on coupons with interest thereon.

In examining carefully the ample briefs printed with the case, we do not discover that the question of interest was mooted. The only question was as to the constitutionality of the act of the Legislature of Iowa authorizing the issue of the bonds. The cases cited were also suits instituted to recover judgment upon coupons, nothing being said in either of them about interest thereon, the only questions presented being the constitutional power to issue the bonds, and whether the bonds were negotiable so that any holder might maintain suit ; both of which questions were answered in the affirmative. In examining all the cases cited by the relator in this case, and all we have been able to find, (and they are somewhat numerous,) the question of allowing interest upon coupons or interest warrants, is not determined by the Su-

480 SUPREME COURT.

County Commissioners Columbia Co. vs. King—Opinion of Court.

preme Court of the United States, except by the dicta referred to in the opinion of Mr. Justice Swayne, and a case in 7th Wallace, which again refers to that opinion *as authority*, and we are inclined to think the remark was thrown in as inferential, in connection with the suggestion that this species of paper " has all the qualities of commercial paper." Because these bonds and coupons payable to bearer are negotiable, and may pass from hand to hand like commercial paper, it does not follow, as we are inclined to think, that they have *all* such qualities.

The allowing of interest upon interest, when it comes due at certain stated times, is allowed in Massachusetts, as upon instalments of money payable annually. And Judge Mc-Lean, in Hollingsworth vs. the city of Detroit, 3 McLean, 472, held that interest was recoverable upon coupons of the bonds of the city, but it is put mainly upon a statute of Michigan. The current of authority in England and in this country, however, is against the allowance of interest upon interest, or compound interest, unless there be a contract to pay it made after it accrues.

The coupons annexed to the bonds in question are by no means independent contracts for the payment of money, although they may be treated in commercial circles as negotiable and payable to the holder. The contract to pay interest is *in the bond* and nowhere else. The coupon is a memorandum showing the amount of interest due by the bond, and is an invention of convenience. It purports on its face to be a simple ticket showing how much interest is due on a given day upon the principal sum, and where it may be paid.

Besides, the act authorizing the issuing of these bonds does not expressly authorize the issuing of coupons having the qualities of new contracts, but we do not see that there is anything in the act to prevent the making of these instruments for the purpose intended, to-wit: a convenient mode of adjusting the interest from time to time; yet the act does

not authorize the County Commissioners to agree to pay compound interest, and they are certainly limited in this respect by the authority conferred.

The Commissioners are required to levy and collect taxes to meet the interest *on the bonds*, and this does not authorize them to levy and collect taxes to pay interest upon interest. The contract by an agent is controlled by his authority, as derived from his principal or from the statute, and the agent in this case could make no contract not contemplated by the law, or within the scope of his authority. The law being an essential part of the contract, all parties have notice of its provisions.

We therefore hold that it was error to direct the County Commissioners to collect more than the interest due upon the bonds. That is all that the law requires of them, and therefore that is all that the court can require of them in this proceeding, even though we were to conclude, if a suit at law were to be brought upon the coupons, that interest upon them might be recovered.

At the conclusion of the argument, it was suggested that the interest claimed was computed at a rate greater than should be allowed, and a motion was thereupon made by the relator that the peremptory writ might be amended and the error corrected, if there be one in that respect.

But the alternative writ stands as the pleading on· the part of the relator, and if he asks too much, the respondents may show this as a sufficient cause for not complying with the mandate of the alternative writ of mandamus. According to the conclusions at which we have arrived, interest upon the coupons not being allowed, the peremptory writ was erroneous in that respect.

The order for the peremptory writ must be reversed and set aside, and the relator may amend the alternative writ by remitting the claim of interest upon the coupons, and he will be entitled to a peremptory mandamus.