THE STATE OF FLORIDA, *ex rel.,* W. V. KNOTT, *Relator,* v. E. E. HASKELL, *et al., Respondents.*

## Opinion Filed Aug. 8, 1916.

1. The rights of a candidate which arise under, and are created by the primary election laws of the State of Florida, are such that when violated the courts of this State may be resorted to for their enforcement, and the writ of mandamus may be used to compel the performance of the duties which are imposed by law upon the officers designated to accurately count the ballots and to canvass the returns of a primary election, such duties being ministerial in their nature involving no discretion.

2. For the purpose of requiring election officers to correctly and accurately count and make due return of the votes as cast, mandamus and not *quo warranto* is the remedy, the statute making no special provision for enforcing these ministerial duties.

3. The writ of mandamus is granted by the courts to enforce the performance of a ministerial duty imposed by law where such duty has not been performed *as the law requires.*

4. The writ of mandamus issues only when the law affords no other adequate remedy; and when the writ is applicable it should be framed to meet the exigencies of the case.

5. When a relator is entitled to a writ of mandamus he should have an effective writ.

6. Where several distinct ministerial duties are to be performed, by different persons or boards as a means to an end, so as to preserve the integrity and unity of the performance as an entire duty, all such persons may be joined in one writ of mandamus when no provisions or fundamental principles of law are thereby violated.

7. The inspectors and clerks of the several election districts of a county and the members of the county canvassing board may be made parties defendant in a writ of mandamus designed to require an accurate count and return of the votes cast at a primary election held under the statute, and also to require the returns made by the election district officers to be duly canvassed and return thereof duly made to the State canvassing board as the law provides.

8. The ministerial duty imposed by law upon precinct election officers to make a correct count and return of the votes as cast in a primary election held under the statute is a continuing one; and mistakes made by such officers in counting and returning the votes as cast may be corrected in mandamus proceedings duly taken in proper cases.

9. The provision of Section 45, Chapter 6469 as amended by Section 7, Chapter 6874 Acts of 1915, that the poll lists, oaths of inspectors and clerks, with the ballot boxes, ballots, etc., used in conducting a primary election shall be transmitted, sealed up by the inspectors, to the supervisor of registration to be filed in his office, and carefully preserved by him until after the next ensuing election, contemplates the safe keeping of the ballots &c., for such use as the law may direct.

10. The use in mandamus proceedings of primary election ballots &c., required to be carefully preserved until after the next ensuing general election, is recognized by the provision of section 55 of the primary election law as amended in 1915, relative to "proper parties defendant in all matters affecting the accuracy of the election returns."

11. Where ballot boxes, ballots &c., used in a primary election are carefully preserved as required by the statute, the inspectors and clerk of an election district cannot avoid obedi-

12

ence to a judicial writ requiring them to accurately count and return the ballots as cast, when such writ gives the inspectors and clerk access to the ballots &c., that have been properly kept as required by law, through the legal custodian who is a defendant in the writ.

12. The command of the alternative writ that the county canvassing board ·shall canvass precinct returns as correctly made, does not violate the provision of section 46 of the primary election law, confining the county canvassing board to a canvass merely of "the returns and certificates of the inspectors," since such statutory provision contemplates the making of correct and accurate "returns and certificates" by the inspectors.

13. The power which the court exercises by the writ of mandamus to compel a public officer to correctly perform the ministerial duties pertaining to his office and which by law he is required to perform is independent of the statute; it rests in the sovereign power of the State and is confided to the judicial branch of the government.

14. Where an election law contains no provision evidencing a legislative purpose to make the returns of inspectors the final determination as to the votes actually cast at an election for any candidate or proposition before the electors in such election, the court will in a proper case by writ of mandamus compel such election officers to make their returns and certificates to speak the truth if by any possibility it can be accomplished, thus requiring such officers to perform the duty required of them by law, viz: to make correct returns of the votes actually cast.

15. Chapter 6469 Laws of Florida, 1913, entitled an "act to provide for and regulate Primary Elections" as amended by Chapter 6874 Laws of Florida, 1915, provides for judicial proceedings involving "matters affecting the accuracy of the election returns." This provision is inconsistent with the idea that as a matter of public policy the speedy declaration of the result of a primary election is of greater importance

to the public than a correct count of the votes actually cast and a declaration of the correct result.

16. Prior to the adoption by the legislature in 1915 of the amendment to Chapter 6469 Laws of Florida, 1913, this court had declared the policy of this State to be that the rights of a candidate arising under the primary election laws would be enforced by the courts. The amendment providing for proceedings involving "matters affecting the accuracy of the election returns" was in recognition of such policy and should be construed in aid of such legislative recognition and purpose.

17. Where a statute recognizes the power of a court to compel by appropriate writs the performance of ministerial duties by primary election officers to secure the rights of candidates arising under such law, the failure of the statute to expressly declare the mode of procedure will not defeat its purpose.

18. A primary election law whose evident purpose was to secure a fair primary election and a correct and honest count of the votes cast at such election and which makes provision for the preservation of the ballots cast and for proceedings involving matters affecting the accuracy of the election returns, should receive from the courts such construction of all its provisions that the purpose of the act may be carried into effect and the rights of all candidates arising thereunder protected, and not such a construction as would defeat that purpose.

19. This writ merely commands the accurate returns that the law requires of the respondents as ministerial officers.

20. An accurate count, return and canvass may be required by mandamus; and the effect thereof in other proceedings is not determined on this writ.

21. The provisions of the primary election law as to second choice votes are not void for uncertainty; and as they relate only to nominations of party candidates and not to the election of officers, such provisions do not conflict with organic law.

22. Questions of eligibility to hold office are not determined in this mandamus proceeding, and the suggestion that the position of nominee as a party candidate for office, is such an office as is referred to in the constitution forbidding a person to hold or perform the functions of more than one office, is manifestly without merit.

23. The statutory requirement that a candidate shall make oath "that he *is* qualified," has reference to qualifications applicable when elected and the term of the office begins.

24. Where a writ of mandamus makes it practicable for ministerial officers to perform a legal duty, such performance may be enforced.

This is an Original Proceeding in Mandamus.

Demurrer and motion to quash overruled.

*Statement.*

An alternative writ of mandamus was issued by this court against the three members of the County. Canvassing Board of Putnam County, and against the three inspectors of election and the clerk of election in each of the twenty-eight election districts of that county. The command of the writ was performed by all of the respondents except the three inspectors and the clerk of election in Election District No. 2, who filed a demurrer to the alternative writ, and also upon the same grounds a motion to quash the writ. The parts of the alternative writ necessary to be produced here are as follows:

*"In the Name of the State of Florida:*

"To E. E. Haskell, County Judge, Hennis Peterson, Supervisor of Registration, and Charles E. Rowton,

Chairman Board County Commissioners, as and constituting the County Canvassing Board of said County; * * * and A. K. McCaskell, Max Melzer, and J. C. Tucker, Jr., Inspectors, and S. R. Causey, Clerk, Precinct No. 2. * * *

"*Whereas,* W. V. Knott, Relator, has by petition filed in this court, made it appear that:

"1st. That the State Democratic Primary Election was held in Putnam County and other counties of said State on the 6th day of June, 1916, under the provisions of Chapter 6469, Laws of Florida, 1913, as amended, entitled, '*An Act* to Provide for and Regulate Primary Elections' for the purpose of nominating State and County Officers, including Governor of said State; that the Democratic Party is a political party within the meaning of the said Act and was required by the terms of said Act to nominate by said Primary Election, candidates for State and County Offices for election at the general election to be held in the State of Florida on the Tuesday next succeeding the first Monday in November, 1916.

"2nd. That at said Primary Election your Relator and Sidney J. Catts, F. M. Hudson, Ion L. Farris and F. A. Wood were all candidates whose names appeared on the ballot used at said election and were voted for as candidates for Governor of said State; that according to the election returns from the several counties as so far canvassed by the several County Canvassing Boards and as ascertained from the one county where said canvass has not been completed, neither of the candidates for said office receiving a majority vote; that according to said returns, however, your Relator and the said Sidney J. Catts were the high men as regards first choice votes; that said Catts received 30,092 first choice votes and your relator having received 24,720 first choice votes; that on

account of the fact that no candidate for said office received a majority of first choice votes, it became necessary to exclude the other three candidates, Hudson, Farris and Wood and take into consideration the second choice votes cast for your Relator and the said Catts in order to determine which one has been nominated for said office; that under the law only the second choice votes cast for your Relator and the said Catts respectively which appeared on the first choice ballot of the other three candidates could be counted and credited to your Relator and the said Catts respectively; that according to the returns sent in by the several County Canvassing Boards to the State Canvassing Board in said State the said Catts received 3,337 second choice votes and your Relator 8,449 second choice votes; that according to said returns there was a difference between the total of first and second choice votes for the said Catts and your Relator of 260 votes in favor of said Catts, but that on account of irregularities and inaccuracies in the counting of votes at said election, as will hereinafter appear, the said Catts did not in fact receive a majority over your Relator, as appeared by said returns, but that your Relator did in fact receive a majority of the votes cast at said election for said office when the second choice votes are taken into consideration.

"That the vote cast for the Relator and said Catts, respectively, as appears by the returns sent in by the County Canvassing Board of said Putnam County to the Secretary of State was as follows, to-wit:

## FOR THE RELATOR.

| First Choice | Second Choice | Total | Second Choice From |  |  |
|---|---|---|---|---|---|
|  |  |  | Farris | Hudson | Wood |
| 502 | 74 | 576 | 35 | 26 | 13 |

## FOR S. J. CATTS.

| First Choice | Second Choice | Total | Second Choice From | | |
|---|---|---|---|---|---|
| | | | Farris | Hudson | Wood |
| 510 | 27 | 537 | 9 | 10 | 8 |

\* \* \* \* \* \*

"6th. That in precinct No. 2 of said county the inspectors and clerk appointed to hold said election, failed and neglected to perform their duties as inspectors and Clerk, in that:

"(a) While they were canvassing the vote cast in said precinct at said election for said office, they did not themselves personally call and tally the votes cast for the relator and the said Catts respectively; that they permitted outside parties, who were partisans of the said Catts and not inspectors and not under oath or otherwise qualified to act, to assist in calling and tallying the votes cast for the relator and other candidates for said office respectively, at said election; that the said outsiders did not correctly call and tally said votes, and the incorrect call and tally made by such outsiders in part formed the basis of the pretended returns sent in by the said inspectors and clerk to the Supervisor of Registration and County Judge from said precinct;

"(b) That the said inspectors and clerk appointed to hold said election in said precinct further failed to perform their duty in that the returns of said election sent in by them to the Supervisor of Registration and County Judge respectively, are incorrect and do not show the true number of first and second choice votes cast for the relator and the said Catts respectively as appears upon the ballots cast by the electors voting at said precinct; that a correct call, tally and return of the votes cast in said

precinct will show a substantial gain of first and second choice votes in favor of the relator; that the relator is entitled to have the votes cast in said precinct No. 2 correctly counted, tallied and returned so as to ascertain the true number of first and second choice votes cast for the relator and the said Catts respectively. * * *

"That the inspectors and clerks holding said election failed to perform their duties in that:

"(a) The said inspectors and clerks holding said election in many of said precincts, not realizing the importance of properly calling and tallying the second choice votes did not call or tally the second choice votes at all.

"(b) The said several sets of inspectors and clerks holding said election in said precincts failed to tally correctly the second choice votes called for the relator by reason of the fact that the relator's name appeared fourth on the ballot, also fourth on the tally sheet and when endeavoring to place a tally of the second choice votes for the relator in the proper square on the tally sheet, placed such tally in such square opposite the name of some other candidate; that the name of the said Catts appeared first upon the ballot also first upon the tally sheet and that such mistakes in tallying the second choice votes for said Catts were much less frequent because it was easier to find the appropriate square in which to make such tally.

"(c) That the said inspectors and clerks of said precincts further failed in the performance of their duty in that the returns of said election sent in by said inspectors and clerks severally to the County Judge and Supervisor of Registration did not accurately and correctly show the true number of first and second choice votes cast in said precincts severally for the relator and the said Catts respectively as appears from the ballots cast in said pre-

cincts severally; that the failure to perform their several duties alleged in this paragraph with reference to the precincts mentioned in this paragraph also applies to each of the precincts mentioned in the paragraph preceding this one; that the Supervisor of Registration and County Judge of said county have failed and refused to permit the relator or any citizen of this State acting in his behalf to examine the tally sheets returned to them by the inspectors from the several precincts in said county, although such tally sheets are now in their custody and constitute public records; that the relator is advised and believes that an examination of said tally sheets will show that many of the said sets of inspectors and clerks made unintelligible returns as to the second choice votes, but on account of being unable to examine said tally sheets now in the hands of said officers as aforesaid, the relator is unable to make more specific allegations than is herein stated.

"12th. That the relief sought by this petition is a matter of great public importance to the entire State of Florida; that it appears by the allegations hereinbefore stated, that numerous similar petitions have been presented to the various Circuit Judges of the State and variously ruled upon; that in the event of appeal being taken upon the rulings of the said several Circuit Judges, the time required by law to get a final decision by this Court and then further proceedings in said Circuit Courts so as to reach the final results and determination of the matters involved respecting said election, will so nearly approach the time for holding the General Election that the State officials would not have time enough required by law to issue proper certificate and give proper directions for the printing of the ballots to be used at said General Election;

that this petition is presented to the Court so that a decision may be rendered touching the matters involved herein which will be authority and furnish a guide to the several Circuit Courts where similar matters are now pending or may be pending in the near future.

"13th.    That the said several sets of inspectors and clerks of said precincts of Putnam County have dispersed since making their original canvass of votes cast at said precincts respectively, and will not reassemble to make a recount and recanvass of said votes unless ordered so to do by this Court; that the said E. E. Haskell and Hennis Petermann, two of said respondents, members of said County Canvassing Board of Putnam County now have in their custody and control the ballot boxes containing the original ballots cast in said several precincts of Putnam County at said primary election; that the said ballot boxes have been preserved intact and that the ballots therein contained have not been tampered with; that the said respondents having in their possession the said ballot boxes as aforesaid, will not deliver them to said several sets of inspectors and clerks for the purpose of making a recount and recanvass or for any other purpose unless ordered to do so by this court; that the said respondents constituting the said County Canvassing Board of Putnam County will not make any further or amended returns of the votes cast in said Putnam County at said Primary Election to the said State Canvassing Board until the votes cast in the aforesaid precincts of Putnam County have been recounted and recanvassed pursuant to an order of this court;

"Now, Therefore, you, the said E. E. Haskell, County Judge, Hennis Peterman, Supervisor of Registration, and Charles E. Rowton, Chairman Board of County Commissioners, as and constituting the County Canvassing

Board of said County; * * and A. K. McCaskell, Max Melzer, and J. C. Tucker, Jr., Inspectors, and S. R. Causey, Clerk, Precinct No. 2; * * at the Primary Election, held in the said State and County, on the 6th day of June, A. D. 1916, are hereby commanded forthwith to convene your respective Boards at the Court House in Palatka, Putnam County, Florida, and thereupon the said E. E. Haskell, as County Judge of said County, and the said Hennis Peterman, as Supervisor of Registration of said County, and the said Charles E. Rowton, as Chairman of the Board of County Commissioners of said County, or either of them, having the same in their possession, are commanded forthwith to deliver to the said inspectors aforesaid and to the said Clerks of the respective Election Precincts, aforesaid, so convened, the tally sheets, and other records, and the ballot boxes, and the ballots therein, issued and cast in the said above mentioned Election Precincts respectively in and for said Putnam County, Florida, at said Primary Election, and the said inspectors and said clerks of their respective Election Precincts are further hereby commanded then to forthwith proceed immediately to properly, correctly and accurately tally and count, and proper, correct and accurate return make of all of the said votes so cast in said above mentioned Election Precincts respectively, for the several candidates for nomination by the said Democratic Party as its candidate for the office of Governor of the State of Florida to be voted upon at the next ensuing General Election, so, that such returns from the respective Election Precincts aforesaid, will properly, correctly and accurately show all of the first choice votes cast for each of the respective candidates herein mentioned, and therein voted upon, and so that said returns will show

all the second choice votes cast for the respective
candidates for said nomination, in accordance with
law, so that the same may be properly, correctly and ac-
curately canvassed by the said County Canvassing Board
and return of such canvass made to the Secretary of State
and the Governor of the State of Florida in accordance
with law, so that the Relator and his opponent, the said
Catts, will receive, obtain and have the benefit and count
of each and every of the second choice votes cast for the
relator or the said Catts by the Democratic Electors vot-
ing in said above mentioned Election Precincts respect-
ively in Putnam County, Florida, who cast their first
choice votes for the other candidates for said nomination
who have been eliminated by law by reason of having re-
ceived a lesser number of first choice votes than the Re-
lator or the said Catts, and that the said County Canvass-
ing Board do supervise said several sets of inspectors and
clerks while making such recount and recanvass; and that
thereupon the County Canvassing Board, constituted as
aforesaid, be required as aforesaid, to immediately re-
ceive from the said inspectors and said clerks the cor-
rected returns so properly, correctly and accurately
counted, tallied and returned to said County Canvassing
Board, and that thereupon the said County Canvassing
Board do forthwith properly, correctly and accurately
recanvass the returns of the said several Election Pre-
cincts in and for the County of Putnam and State of
Florida, in so far as the same relate to the votes cast by
the electors voting in said Primary Election held in said
State and County for the several candidates for nomina-
tion as the candidates of the Democratic Party for the
office of Governor, and that after having so re-canvassed

said returns from said county as corrected that they certify, in duplicate, such corrected canvass of such returns by transmitting one of such duplicates to the Honorable Secretary of the State of Florida, and the other of such duplicates to the Governor of the State of Florida;

"Or that you appear before the Justices of this, our Supreme Court, sitting within and for the State of Florida, at the Court Room in the City of Tallahassee, on or before the 27th day of July, A. D. 1916, at ten o'clock in the morning of that day, and show cause why you refuse so to do;

"And have you then and there this writ.

"*Witness the Honorable R. Fenwick Taylor,* Chief Justice of the Supreme Court of the State of Florida, and the Seal of said Court, at Tallahassee, the Capital, this 17th day of July, A. D. 1916.

"G. T. WHITFIELD,
"(Seal)    Clerk Supreme Court State of Florida."

The demurrer and the motion to quash are each upon the following grounds:

"1. The allegations in said alternative writ affirmatively show, that said Relator has two plain, adequate and complete remedies at law, by proceeding in the nature of quo warranto in proper courts, and by protest to Democratic Executive Committees. See Sections 274-275 General Statutes of Florida, and Section 63, page 159, Chapter 6874, Acts of A. D. 1915.

"2. The allegations in said alternative writ affirmatively show, that said relator has a plain, adequate and complete political remedy before the qualified electors of Florida in the general election to be held November 6, 1916. See Section 2, Declaration of Rights, Constitution of 1885.

"3.   The allegations in said alternative writ affirmatively show, that said Relator is herein and hereby seeking to have separate and distinct officers perform separate and distinct acts, at separate and distinct times, and herein is a misjoinder of causes in this one proceeding.

"4.   The allegations in said alternative writ affirmatively show, that said Relator is herein and hereby seeking to have separate and distinct acts performed by separate and distinct officers and herein is a misjoinder of parties respondents in this proceeding.

"5.   The allegations in said alternative writ affirmatively show, that said Relator is herein and hereby seeking to have separate and distinct officers perform separate and distinct acts, impossible of performance at the same time in this one proceeding, and herein is a misjoinder of both parties respondents and causes.

"6.   The allegations in said alternative writ affirmatively show, that said Relator is herein and hereby seeking to have separate and distinct officers for separate and distinct reasons, at separate and distinct times, perform separate and distinct acts and herein is a misjoinder of both causes and parties respondents for the convenience of said Relator and to the great inconvenience and expense of Respondents.

"7.   The allegations in said alternative writ affirmatively show, that said Relator is herein and hereby seeking to force said Respondents to perform the act of *re-convening* not required by law.

"8.   The allegations in said alternative writ affirmatively show, that said Relator is herein and hereby seeking to force said Respondents to perform the act of *re-opening* the ballot boxes not required by law.

"9.   The allegations in said alternative writ affirma-

tively show, that said Relator is herein and hereby seeking to force said Respondents to perform the act of *recounting* the votes not required by law.

"10.   The allegations in said alternative writ affirmatively show, that said Relator is herein and hereby seeking to force said Respondents to perform the act of *retallying* the votes not required by law.

"11.   The allegations in said alternative writ affirmatively show, that said Relator is herein and hereby seeking to force said Respondents to perform the act of making *amended returns,* not required by law.

"12.   The allegations in said alternative writ affirmatively show, that said Relator is herein and hereby seeking to force said Respondents to perform the act of *reproclaiming* the result not required by law.

"13.   The allegations in said alternative writ affirmatively show, that said Relator is herein and hereby seeking to force said Respondents to perform what he contends will be an official act, without and beyond the territorial limits of Precinct Number Two of Putnam County, Florida.

"14.   The allegations in said alternative writ affirmatively show, that said Relator is herein and hereby seeking to force said Respondents to perform the act of changing or varying the number of votes cast for the candidates for Democratic Nominee for Governor, which is forbidden by last sentence of Sec. 46, Ch. 6469, Acts A. D. 1913, page 263.

"15.   The allegations in said alternative writ affirmatively show, that the acts sought to be compelled as official could only be lawfully performed by said Respondents within the territorial limits of Precinct No. Two of Putnam County, Florida.

"16.   The allegations in said alternative writ affirmatively show, that the acts sought to be compelled as official and at the court house in Palatka, Putnam County, Florida, which is without and beyond the territorial limits of Precinct Number Two of Putnam County, Florida, and beyond the territorial jurisdiction of said Respondents, would be *ultra vires.*

"17.   The allegations in said alternative writ affiramtively show, that said Relator is herein and hereby seeking to force said Respondents to perform acts which they could not *voluntarily* perform.

"18.   The allegations in said alternative writ affirmatively show, that said Relator is not entitled to the performance by said Respondents of the acts demanded herein.

"19.   The allegations in said alternative writ affirmatively show, that said Respondents have already 'honestly, faithfully and to the best of their ability' done and performed all the duties required of them by law.

"20.   The allegations in said alternative writ affirmatively show, that said Relator is herein and hereby seeking to force said Respondents to re-convene, re-open the ballot boxes, to re-count the votes, re-tally the votes and make amended returns thereof, because of alleged errors in other counties in Florida.

"21.   The allegations in said alternative writ affirmatively show, that Relator is herein and hereby seeking and demanding *absolute accuracy* in the call, tally, count and return of votes, which is not required by law.

"22.   The allegations in said alternative writ affirmatively show that said Respondents have already discharged their duties with reasonable accuracy required by the law.

"23. The allegations in said alternative writ affirmatively show, that said Respondents have already discharged their duties within the *time* required by law and cannot be afterward required to repeat performance thereof.

"24. The allegations in said alternative writ affirmatively show, that said Respondents have already discharged their duties within the territorial limits of Precinct Number Two of Putnam County, Florida, as required by law.

"25. The allegations in said alternative writ affirmatively show, that the performance of the acts sought to be compelled would not change the result of the election.

"26. The allegations in said alternative writ affirmatively show, that the laws of Florida do not require Respondents to do or perform the acts sought to be compelled.

"27. The allegations in said alternative writ affirmatively show, that the acts sought to be compelled would be contrary to law.

"28. The allegations in said alternative writ affirmatively show, that Respondents are not legally and in duty bound to do and perform the acts sought to be compelled.

"29. The allegations in said alternative writ affirmatively show, that said Relator is herein and hereby seeking to have the title of Sidney J. Catts as Democratic nominee for Governor of the State of Florida tried, determined and adjudicated, and this is not the proper proceeding therefor.

"30. The allegations in said alternative writ affirmatively show, that Sidney J. Catts as Democratic nominee for Governor of Florida is a necessary, and an indis-

pensably necessary, party defendant herein, and there is a non-joinder of defendants herein.

"31.    The allegations in said alternative writ affirmatively show, that performance of the acts herein and hereby sought to be compelled would be in violation of the Constitution and laws of Florida.

"32.    The allegations in said alternative writ affirmatively show, that Relator is herein and hereby seeking to have the title of Sidney J. Catts as Democratic nominee for Governor of Florida determined and adjudicated, without making him a party hereto and without service of any process upon him, and which would be in violation of our Federal Constitution and statutes.

"33.    The allegations in said alternative writ affirmatively show, that Relator is herein and hereby seeking to have the title of Sidney J. Catts as Democratic nominee for Governor of Florida adjudicated, who is not a party hereto, and the granting of the relief herein sought and prayed would be denying the said Sidney J. Catts the equal protection of the law, in violation of our Federal Constitution and statutes.

"34.    The allegations in said alternative writ affirmatively show, that facts therein alleged could not possibly be within the knowledge of said Relator without his having violated the spirit and meaning of the Constitution and laws of Florida in ascertaining such facts.

"35.    The allegations in said alternative writ affirmatively show, that Relator is herein and hereby seeking to violate the secrecy of the ballot, which is contrary to the spirit and meaning of the Constitution and laws of Florida.

"36.    The allegations in said alternative writ affirmatively show, that Respondents cannot perform the acts

sought to be compelled without violating the intention and meaning of the Constitution and laws of Florida.

"37.   The allegations in said alternative writ affirmatively show, that said Relator is herein and hereby seeking and demanding more than one Primary Election be held, which is contrary to law.

"38.   The allegations in said alternative writ affirmatively show, multifariousness.

"39.   The allegations in said alternative writ affirmatively show, that said Relator is herein alleging material matters, which he could not possibly know without having violated the law.

"40.   The allegations in said alternative writ affirmatively show inconsistency and repugnancy.

"41.   The allegations in said alternative writ affirmatively show, that said Relator is guilty of laches.

"42.   It is not alleged in said alternative writ that said Respondents are now any more capable of more accurately again performing or repeating the acts sought by Relator.

"43.   It is not alleged in said alternative writ that said Relator has ever demanded of said Respondents the acts sought.

"44.   It is not alleged in said alternative writ that said Respondents ever refused to perform the acts sought.

"45.   It is not alleged in said alternative writ that it is the plain duty of said Respondents to perform the acts sought.

"46.   It is not alleged in said alternative writ that it is the duty of said Respondents to perform the acts sought at this time.

"47.   It is not alleged in said alternative writ that the

relief prayed, if granted, would change the result of the election.

"48.    It is not alleged in said alternative writ that Respondent or either of them, failed to perform their duty 'honestly, faithfully and to the best of their ability,' which is all the law requires them to do.

"49.    It is not alleged in said alternative writ, that any objection whatever was ever made by or on behalf of said Relator, to the manner or form in which said Respondents acted, at the time and place mentioned, as required by law.

"50.    It is not alleged in said alternative writ, that any demand was ever made upon said Respondents to do or perform the acts hereby sought to be compelled.

"51.    It is not alleged in said alternative writ that said Respondents ever refused to do or perform the acts herein and hereby sought to be compelled.

"52.    It is not alleged in said alternative writ, that any protest or objection has been filed with either said county or said State Democratic Executive Committee, as required by law.

"53.    It is not alleged in said alternative writ, that the re-count sought to be compelled would show any greater gain for Relator than for Sidney J. Catts.

"54.    It is not alleged in said alternative writ, that formance of acts sought to be compelled would show any more substantial gain for Relator than for Sidney J. Catts.

"55.    It is not alleged in said alternative writ that performance of the acts sought to be compelled would show any net gain to Relator.

"56.    It is not alleged in said alternative writ, that an accurate count at the time and place required by law

would then and there have shown any different result than is now shown by the returns of Respondents.

"57.   It is not alleged in said alternative writ, that the ballot boxes, were promptly sealed and returned by respondents.

"58.   It is not alleged in said alternative writ, that the ballot boxes have been continuously securely kept as required by law.

"59.   It is not alleged in said alternative writ, that the ballots in the ballot boxes now are the same identical ballots deposited therein by the respective voters in said precinct.

"60.   Those parts of the Acts of the Legislature alleged in said alternative writ not to have been understood by those appointed to execute them are void as against public policy.

"61.   Those parts of the Acts of the Legislature requiring the second choice votes to be counted are unconstitutional.

"62.   Those parts of the Acts of the Legislature requiring second choice votes to be counted the same as first choice votes are unconstitutional.

"63.   The Relator is holding the office of Comptroller of the State of Florida and is disqualified thereby to hold the office of Democratic Nominee for Governor of Florida.   See Section 15, Article XVI, and Section 20, Article IV, and Section 17, Article XVI, of the Constitution of A. D. 1885.

"64.   The Relator, holding the office of Comptroller of the State of Florida, on November 6th, A. D. 1916, at the general election will be disqualified to hold the office of Governor of Florida, and will not be eligible for election thereto, under the Constitution and laws of Florida.

"65. Compelling Respondents to perform the acts sought by Relator would be denying Respondents the equal protection of the law, in violation of our Federal Constitution and statutes.

"66. The counting of second choice votes as first choice votes in accordance with the requirements of the Acts of the Legislature would be denying to duly qualified electors and voters the equal protection of the law, and would be in violation of our Federal Constitution and statutes.

"67. That said Relator, under Section 15, Article XVI, of our Constitution, and Section 22, page 252, Chapter 6469, Acts of A. D. 1913, was disqualified to hold the office of Governor of Florida, and was then and there disqualified to enter the primary election of June 6th, A. D. 1916, as alleged in said alternative writ."

The statutes of the State contain the following provisions:

"The nomination of all candidates for all elective State, Congressional and County Offices, for United States Senator, and for the election of members of the State, Congressional and County Executive Committees, by all political parties as defined by this Act, shall be made in the manner provided in this Act, and not otherwise."

"A primary election shall be held, on the first Tuesday after the first Monday in June of every year in which a general election is held, for the nomination of candidates by all political parties."

"Every candidate for nomination to any office herein provided for shall be required to take and sign and subscribe to an oath or affirmation in writing, in which he shall state the particular party of which he is a member; that he did not vote for any nominee of any other party,

National, State or County, at the next preceding general election; the title of the office for which he is a candidate; that he is a qualified voter of the State, giving the name of the county of his legal residence; that he has paid his poll taxes legally due; that he is qualified under the constitution and laws of Florida to hold the office for which he desires to be nominated; that he has paid the assessment levied against him as a candidate for said office by the appropriate executive committee of the political party of which he is a member; that he has not violated any of the laws of the State relating to elections or the registration of voters.

"Said sworn statement shall be substantially in the following form:

"STATE OF FLORIDA
COUNTY OF _____

"Before me, an officer authorized to administer oaths, personally appeared _____, to me well known, who, being sworn, says he is a member of the _____ party; that he did not vote for any nominee of any other party, National, State, or County, at the last general election; that he is a candidate for nomination for the office of _____ in the general primary election in the year 19___; that he is a qualified voter of _____ County, Florida; that he has paid his poll taxes legally due; that he has paid the assessment levied against him as a candidate for said office by the _____ Executive Committee of the _____ party; that he is qualified under the constitution and laws of Florida to hold the office for which he desires to be nominated; and that he has not

violated any of the laws of the State, relating to elections or the registration of voters.

"_____
   "(Signature of candidate)
"Sworn to and subscribed before me this _____
_____day of _____ 19___, at
_____ County, Florida.
        "_____
        "Signature and title of officer administering oath."

Sections 1, 5 and 22, Chapter 6469, Laws of 1913.

"The primary elections required by this Act, except as herein otherwise provided, shall be held in accordance with the provisions of Article 1 of Title IV, First Division of the General Statutes of Florida. * * *" Sec. 10, Chapter 6874, Laws of 1915.

Under the above section and the provisions of Section 205, Art. I, Title IV, First Division of the General Statutes of Florida, the County Commissioners are required to appoint three inspectors of election and a clerk of election in each election district for the purpose of conducting the primary election.

"At the close of the primary election at each polling place, the inspectors and clerk shall proceed in the manner provided by law in the case of general elections, and, in addition thereto, it shall be the duty of the inspectors and clerk of election in each election district carefully to enter the number of the first and second choice votes for each candidate and make return thereof as herein provided. First and second choice votes shall not be cast by a voter for the same candidate, and in the event this shall be done, only the first choice votes shall be counted."

"The canvass being completed, the results shall be publicly proclaimed. Two tally books shall be used to

show the results of such election by the inspectors and clerk at each and every election precinct, which shall contain the name of each person voted for for each office, and the number of votes cast for each person for such office, and in all cases where first and second choice ballots are voted, the number of first choice votes received by each candidate and for which particular candidate said electors cast their second choice votes, and the number thereof.

"The inspectors and clerk shall certify the tally books, which certificates they shall sign, one of which tally books shall be by one of the inspectors delivered without delay, securely sealed, to the Supervisor of Registration and the other to the County Judge of the county. And the poll lists and oaths of the inspectors and clerks, together with all ballot boxes, ballot stubs, memoranda and papers of all kinds used by the inspectors and clerks in conducting such election shall also be transmitted, sealed up by the inspectors, to the Supervisor of Registration to be filed in his office, and carefully preserved by him until after the next succeeding general election.

"The certificate provided for in this section shall be in substantially the following form:

"State of Florida,

_____County.

"We, the undersigned, Inspectors and Clerk of Election Precinct No. _____, _____County, Florida, do hereby certify that the within tally of the votes as shown by this tally book is correct; that there have been placed back in the ballot box and returned to the Supervisor of Registration unused_____ballots of the _____party, and_____ballots of the _____party.

"Witness our hands and seals this_____day of _____191___.

"_____

"_____

"_____

"Inspectors.

"_____

"Clerk."

Secs. 6 and 7, Chapter 6874, Acts of 1915.

"On the sixth day after any primary election, or sooner, if the returns shall have been received, it shall be the duty of the County Judge and the Supervisor of Registration to meet at the office of said Supervisor of Registration and take to their assistance the chairman or other member of the Board of County Commissioners; and in case of absence, sickness, refusal to act, or other disability of the County Judge or Supervisor of Registration, another member of the Board of County Commissioners who shall be designated by the chairman of said board, shall act in his place, who shall constitute and be the County Canvassing Board of primary elections; and they shall proceed publicly to canvass the vote given for the several nominations and the persons as shown by the returns on file in the offices of such County Judge and Supervisor of Registration. Such canvass shall be made solely, exclusively and entirely from the returns and certificates of the inspectors in each Election District, as signed and filed by them with the County Judge and Supervisor of Registration, respectively, and in no case shall the Board of County Canvassers change or vary in any manner the number of votes cast for the candidates respectively, in any polling place in the county, as shown by the returns of the inspectors of such polling place."

"The County Canvassing Board of primary elections shall compile the results of the primary election, as shown by the returns of the inspectors, and shall then make and sign duplicate certificates containing, in words written at full length and in figures, the whole number of votes given for each nomination; the names of the persons for whom such votes were given for such nomination, and the number of votes given for each person for such nomination; and in cases of first and second choice ballots, the number of first choice votes received by each candidate in the County and for which particular candidates the said electors cast their second choice votes, and the number thereof, in the same manner for the counties as is required of the inspectors and clerks of each election precinct. Such certificate shall be recorded by the Supervisor of Registration in a book to be kept by him for that purpose, which book shall be furnished by the Board of County Commissioners, and shall be labeled 'Record of Primary Election Returns,' and one of such duplicates shall immediately be transmitted, by mail or by express, to the Secretary of State, and the other to the Governor of the State. The Supervisor of Registration shall transmit by mail to the Secretary of State, immediately after the County Canvassing Board shall have canvassed the returns for State and County Officers, a list giving the names of all county officers nominated, the office for which each was nominated, with the postoffice address of such nominees, in their respective counties."

"On the twentieth day after the holding of any primary election, or sooner, if the returns shall have been received from the several counties wherein a primary election shall have been held, the Secretary of State, the Comptroller and the Attorney General, or any two of them, together with any other administrative officer of

the executive department who may be designated by them, shall meet at the office of the Secretary of State, pursuant to notice to be given by the Secretary of State, who shall constitute and be the State Canvassing Board of Primary Elections, and they shall proceed publicly to canvass the returns of said primary election and determine and declare who shall have been nominated as shown by such returns."

Secs. 46, 47 and 48, Chap. 6469, Acts of 1913.

"All contests over the results of a primary election shall be determined according to the law applicable to like contests over the results of a general election.

"The County Canvassing Board are hereby declared to be the proper parties defendant in all matters affecting the accuracy of the election returns." Sec. 9, Chap. 6874, Acts of 1915.

*Thos. B. Adams, A. B. & C. C. Small* and *W. J. Oven* for Relators;

*W. W. Flournoy, D. C. Campbell, J. N. Blackwell, Register & Donnell,* for Respondents.

PER CURIAM.—(*After stating the facts*).—The purpose and command of this writ are that the election inspectors and clerk of each election district of Putnam County shall properly, correctly and accurately tally and count, and proper, correct and accurate return make of all the votes cast in the primary election held on June 6, 1916, for the several candidates for nomination by the Democratic Party as its candidate for the office of Governor of the State of Florida, to be voted for at the next ensuing general election, so that such returns from the respective election districts will properly, correctly and

accurately show all the first choice vote and all of the second choice vote cast for said candidates respectively in accordance with law, and that such returns shall by the County Canvassing Board be properly, correctly and accurately canvassed and return of such canvass made to the State officers in accordance with law. All of the inspectors and clerks complied with the writ except the inspectors and clerk of Election District No. 2, who by demurrer and motion to quash raised questions of law to be determined.

The rights of a candidate which arise under, and are created by the primary election laws of the State of Florida, are such that when violated the courts of this State may be resorted to for their enforcement, and the writ of mandamus may be used to compel the performance of the duties which are imposed by law upon the officers designated to canvass the returns of a primary election, such duties being ministerial in their nature involving no discretion. See D'Alemberte v. State *ex rel.* Mays, 56 Fla. 162, 47 South. Rep. 489. This principle applies to precinct officers whose ministerial duty it is to correctly count and make return of the votes as cast.

It is manifest that for the purpose of requiring the election officers to correctly and accurately count and return the votes as cast, mandamus and not quo warranto is the remedy, the statute making no special provision for enforcing these ministerial duties. See Territory v. Suddith, 15 N. M. 728, 110 Pac. Rep. 1038; People *ex rel.* Sanderson v. Payne, 64 How. Prac. (N. Y.) 357. A protest to the Party Committee would be unavailing, such committee having no authority in the premises. The relief sought has reference to rights acquired under the primary election law which are distinct from those acquired at the subsequent general election.

The writ of mandamus is granted by the courts to enforce the performance of a ministerial duty imposed by law where such duty has not been performed *as the law requires.* Such writ issues only when the law affords no other adequate remedy; and where the writ is applicable it should be framed so as to meet the exigencies of the case. When a relator is entitled to a writ of mandamus he should have an effective writ. Where several distinct ministerial duties are to be performed by different persons or boards as a means to an end, so as to preserve the integrity and unity of the performance as an entire duty, all such persons may be joined in one writ of mandamus when no provisions or fundamental principles of law are thereby violated. See Labette County Com'rs v. United States, 112 U. S. 217, 5 Sup. Ct. Rep. 108; State v. Harbison, 64 Kan. 295, 67 Pac. Rep. 844.

In this case the duties of the inspectors and clerks of an election district and those of the county canvassing board are distinct but their duties co-operate in the performance of the completed duty of ascertaining the result of the election in the county as a unit. Even if the duties of the officers of the several election districts can be regarded as not co-related, the duties of all of them have relation to the duties of the county canvassing board, and the joining of all the election district officers in one writ cannot affect or embarrass the officers of any one district in the performance of their duty.

One of the most vital contentions is that as the respondents have made a count and a return of the votes cast, and as the ballots have been delivered in the sealed ballot box to the Supervisor of Registration under the law, the respondents, inspectors and clerk, cannot voluntarily again make a count and return, therefore they cannot be compelled to do so. Election officers may by man-

damus be required to correct mistakes made in their re-
turn.    See State v. County Judge, 13 Iowa 139.    The
duty to make a correct return is a continuing one.    See
Schneider v. Lang, 66 Fla. 492, 63 South. Rep. 913.

The statute provides that "the poll lists and oaths of
the inspectors and clerks, together with all ballot boxes,
ballots, ballot stubs, memoranda and papers of all kinds
used by the inspectors and clerks in conducting such elec-
tion shall also be transmitted, sealed up by the inspectors,
to the Supervisor of Registration to be filed in his office,
and carefully preserved by him until after the next suc-
ceeding general election."

This enactment requires the delivery to the supervisor
of registration of the ballots, etc., sealed up in the ballot
boxes, and that they shall be "carefully preserved by him
until after the next succeeding general election."    The
candidates nominated at the primary are to be voted for
at the ensuing general election and the obvious purpose
of this provision is the safe keeping of the ballots, etc., by
the chief election officer of the county until after the next
general election for such use as the law may direct.    And
a proper use of the ballots, etc., is indicated by the pro-
vision of Section 55 relative to "proper parties defendant
in all matters affecting the accuracy of the election re-
turns."    This section necessarily suggests the remedy of
mandamus because in a contest proceeding or *quo war-
ranto* the opposing contestant would have to be a party.
Mandamus having been previously used in ascertaining
the correctness of returns made by inspectors and clerks
of election, by an examination of the ballots, the Legis-
lature recognized this and provided that the ballots, etc.,
shall be carefully preserved in the sealed ballot boxes by
the county election officer "until after the next succeed-
ing general election."    Even if a sealed ballot box with

its proper contents may not be opened by the inspectors after they have sealed it and transmitted it to the supervisor of registration, for the purpose of correcting errors and mistakes made in the count and return of the votes as cast, the statute does not forbid the courts but expressly recognizes the authority of the courts "in all matters affecting the accuracy of the election returns."

In State *ex rel.* Lilienthal v. Deane, 23 Fla. 121, 1 South. Rep. 698, 11 Am. St. Rep. 343, this court issued an alternative writ of mandamus to the election inspectors in a municipal election, but the judgment of the inspectors as to whether a ballot was "a scratched ballot," was not disturbed. In Schneider v. Lang, 66 Fla. 492, 63 South. Rep. 913, it was held that it was a continuing duty of the inspectors and clerk who conducted an election to make a proper return of the result of the election. In these two cases it does not appear that the ballots, etc., had, pursuant to statute, been delivered by the inspectors to another officer for safe keeping. But in the case at bar where the statute expressly requires the ballots, etc., to be sealed up in the ballot box and transmitted to another officer for safe keeping, the inspectors and clerk cannot avoid obedience to a judicial writ to properly count and return the ballots as cast, as is required of them by law, when such writ gives the inspectors and clerk access to the ballots, etc., that are required to be "carefully preserved" by the county election officer, a defendant in the writ, "until after the next succeeding general election," for the obvious purpose of using them in appropriate judicial proceedings in "matters affecting the accuracy of the election returns." The statutes of this State, unlike those of some other jurisdictions, do not provide that the ballot boxes when sealed and delivered to the custody of a particular officer for safe keep-

ing, shall not be opened or the contents used *except* for stated purposes. The sealing and safe keeping under our statute are manifestly designed for use in court proceedings at least in "matters affecting the accuracy of the election returns." Secs. 45 and 55, Chap. 6874, Acts of 1915.

The command of the writ that the county canvassing board shall canvass the returns as corrected and made by the inspectors and clerks of the several election districts does not violate Section 46 of the primary election law. That section confines the county canvassing board to the "certificates and returns" as made by the inspectors and clerks, but it contemplates the making of correct and accurate "certificates and returns" by the inspectors and clerks. The ballots, etc., are required to be preserved for the purpose of showing in authorized proceedings the correctness and accuracy, or the incorrectness and inaccuracy of the certificates and returns made by the inspectors and clerks of election.

The general election law of the State, as the same is contained in the General Statutes, requires the inspectors of election after the canvass of the ballots to transmit to the supervisor of registration the poll lists, oaths, ballot boxes, ballots, ballot sheets, memoranda and papers of all kinds used in conducting the election, sealed up to be filed in his office. The general election law, however, contains no provision for any procedure involving matters affecting the accuracy of the election returns, yet can it be doubted for a moment that the power is inherent in the judicial branch of the government to cause to be corrected an error on the part of election officers who by inadvertence and mistake, or by design and fraudulent intention have made an untrue certificate or return as to the votes actually cast in

14

any election precinct, and by such erroneous or false return defeat the will of the electors? To deny the existence of this power in the judicial branch of the government is to qualify, if not deny, the doctrine that every public officer can be compelled by the court to perform the duties pertaining to his office. This power is wholly independent of the statute; it is an elemental and fundamental principle. If the argument of respondent's counsel is sound, namely: that the determination of a board of inspectors as to the *number* of votes cast for or against a candidate or proposition at an election is forever conclusive, no matter how flagrant the fraud perpetrated, or how gross the neglect of duty, then it follows that it is not the *fact* of a majority vote of the electors which makes a proposed amendment to our constitution a part of it, or a majority or plurality vote of the electors which determines the selection of our State and county officers, but the returns or certificates of the inspectors, however erroneous they may be, determine the will of the electors. The general election law contains no evidence whatever of a legislative purpose to make the first determination of a board of inspectors to be forever final, notwithstanding such determination may have been induced by fraud or reached by disregarding the requirements of the statute or arrived at by the grossest and most flagrant errors, mistakes and misconception of duty, and in the absence of such legislative purpose, we think that it would be the duty of the court in a proper case by writ of mandamus to order the inspectors to make their returns and certificates speak the truth if by any possibility it could be accomplished. The able argument of respondent's counsel has failed to convince us that the action of inspectors of election is not subject to direction by the court by its process of mandamus even under the general election law,

which contains no express provision for proceedings involving "matters affecting the accuracy of the election returns."

In many cases cited by respondent's counsel in their briefs, and in others found by the court by its own research, the doctrine was announced that a board of canvassers having once canvassed the vote and declared the result became *functus officio* and could not be reconvened and required to do what the statute had not expressly required it to do. We have found abundant authority not only in this State, but in other States, asserting the power of the court to compel by mandamus the reconvening of a board of canvassers and a recanvass of the vote. See authorities above cited, and Moses on Mandamus 90; People *ex rel.* Ryan v. Nordheim, 99 Ill. 553; State v. Pigott, 97 Miss. 599, 54 South. Rep. 257; 9 R. C. L. p. 1112 and authorities cited in note to case reported in 36 L. R. A. (N. S.) 1084.

But the case at bar is one in which the power of the court to issue the writ of mandamus to require the inspectors of a primary election to correct the errors which it is admitted by the demurrer they made in tabulating and certifying to the vote cast is involved. The primary election law, as pointed out, expressly provides for proceedings involving "matters affecting the accuracy of the election returns." Chapter 6874 Laws of 1915. Many of the cases cited by counsel for respondents involved the power of the court by writ of mandamus to compel election officers to correct errors in the canvass of the votes at general elections and in some of the cases like the later New York cases construing the particular statute, it was held that the Legislature had by the statute shown its intention to prevent the exercise of the power by the court, and the court interpreted this to be a declaration

of a public policy that a speedy declaration of the result
of a general election was of greater importance to the
public than the individual right to an office.   But it is
perfectly obvious that this principle is not applicable to
the selection of candidates by political parties at a pri-
mary election.   Could any one maintain, for instance,
that public policy would require a speedy determination
of the result of a primary election to select candidates for
the Republican, Socialist or Prohibition parties, assuming
that they were numerically strong enough to claim the
benefits of the primary election statute?   Eight years ago
this court held that the courts would enforce the rights of
a candidate arising under the primary election laws,
D'Alemberte v. State, *supra,* and this is what the relator
is asking in this case.

Other cases cited by respondent's counsel hold that
the doctrine for which they contend does not apply where
the board adjourned without having completed its work,
or refused to perform it, or had made errors in the can-
vass.   See People *ex rel.* Ryan v. Nordheim, *supra.*   Un-
der our primary election law, however, the power of the
court to compel the primary election officers to correctly
perform their duties is expressly recognized as pointed
out above.   The failure of the statute to declare the
mode of procedure under it does not defeat its purpose.
State *ex rel.* Smith v. Burbridge, 24 Fla. 112, 3 South.
Rep. 869.

The intention of the lawmakers being apparent from
the language used to secure a fair primary election and a
correct and honest count of the votes by the inspectors,
the court will not adopt a construction that will defeat
such purpose, but will upon a proper application by the
use of such writs as are at its command require the pri-
mary election officers to make their returns speak the

truth if the records, ballots and poll lists have been securely and safely kept by the proper officers as the law directs. Of course, if this has not been done, and the ballot boxes, poll lists, ballots and records have been tampered with, or bear evidence of having been changed so that the truth cannot be ascertained from the records which the law commands the Supervisor of Registration to safely keep, then manifestly the purpose of the act is defeated, the will of the people as expressed in the statute cannot be carried out, and the peremptory writ will be denied. For the court to adopt any other construction would be to deny to a candidate his rights arising under the primary election laws, render the primary election law a means for the election of candidates by inspectors of election instead of by the ballots of party members and place into the hands of the professional politician an instrument for controlling party nominations, thus frustrating the sole reason for a primary election law; the "absolute assurance to the party member that his wish as to the conduct of the affairs of his party may be expressed through his ballot and thus given effect, whether it be in accord with the wishes of the leaders of his party or not, and that thus shall be put into effect in the primaries the underlying principle of democracy which makes the will of an unfettered majority controlling. In other words, the scheme is to permit the voters to construct the organization from the bottom upwards, instead of permitting leaders to construct it from the top downwards." People *ex rel.* Coffey v. Democratic General Committee, 164 N. Y. 335, 58 N. E. Rep. 124.

The demand for Primary Elections arose from distrust of representative government and the need for pure democracy. In this spirit the Primary Election law was enacted, and it would be a travesty to hold that its only

result has been to change from party government by conventions composed of delegates elected by the party members to government by inspectors appointed by the County Commissioners.

Section 46 of Chapter 6469 provides that the county canvassing board "shall proceed publicly to canvass the vote given for the several nominations and the person as shown by the returns on file in the offices of such County Judge and Supervisor of Registration. Such canvass shall be made solely, exclusively and entirely from the returns and certificates of the inspectors in each Election District, as signed and filed by them with the County Judge and Supervisor of Registration, respectively, and in no case shall the Board of County Canvassers change or vary in any manner the number of votes cast for the candidates respectively, in any polling place in the county, as shown by the returns of the inspectors of such polling place." This enactment clearly contemplates that the "returns and certificates of the inspectors in each election district" shall contain a correct and accurate count and return of the votes as cast. The county canvassing board cannot change or vary the count as shown by the returns of the inspectors. If errors were made in the count and returns of the ballots, the inspectors must correct them. This writ merely commands the accurate returns that the law requires of the respondents as ministerial officers.

The purpose of this writ is not to force the respondents to perform the act of changing or varying the number of votes cast for the candidates for Democratic nominee for Governor; but it is to require an accurate count and return to be made of the votes as actually cast by the electors at the polls, a duty imposed by law.

Though the inspectors may have taken an oath "that

they will honestly, faithfully and to the best of their ability do and perform all the duties of their respective offices," the accuracy of their ministerial count and returns of the votes as cast, may be reviewed in appropriate judicial proceedings. This proceeding does not adjudicate the rights of the several candidates to a party nomination, or their eligibility to hold the office for which they may be candidates. An accurate count and return may be required; and the. effect of such accurate count and return in other proceedings or on other matters does not exclude the proper use of this writ.

The demurrer and motion to quash admit the allegations of the alternative writ that the inspectors and clerk of Election District No. 2 "did not themselves personally call and tally the votes cast;" "that they permitted outside parties * * * to assist in calling and tallying the votes * * * at said election;" "that said outsiders did not correctly call and tally said votes, and the incorrect call and tally made by such outsiders in part formed the basis of the pretended returns sent in by the said inspectors and clerk;" "that the returns so sent in do not show the true number of first and second choice votes cast for relator * * * as appears upon the ballots cast;" "that the Supervisor of Registration and County Judge, two of the members of the County Canvassing Board, now have in their custody and control the ballot boxes containing the original ballots cast;" "that the said ballot boxes have been preserved intact and that the ballots therein contained have not been tampered with." These and other allegations admitted by the demurrer show a right to the full and proper performance of the duty prescribed by statute and commanded by the writ.

It does not appear that the provisions of the statute, particularly those relative to the casting and counting and

return of second choice votes, are so uncertain as to be void, and they cannot be said to be against public policy when they were enacted by the lawmaking power of the State.    The provisions as to second choice votes, relating as they do only to primary elections for nominating party candidates and not the election of officers, do not conflict with any provision of the organic law.   See Kelso v. Cook,       Ind.     , 110 N. E. Rep. 987; Adams v. Lansdon, 18 Idaho 483, 110 Pac. Rep. 280; State *ex rel.* Zent v. Nichols, 50 Wash. 508, 97 Pac. Rep. 728.

Questions of eligibility to hold office are not determined in this proceeding, and the suggestion that the position of nominee as a party candidate for office is such an office as is referred to in the Constitution forbidding a person to hold or perform the functions of more than one office, is manifestly without merit.

Section 22, Chapter 6469, provides that every candidate for nomination to any office shall make oath that, among other requirements, "he is qualified under the Constitution and laws of Florida to hold the office for which he desires to be nominated." This provision makes the part of the prescribed oath "that he *is* qualified" mean that he has the qualifications for the office to be made applicable when elected and the term of the office begins.

In this case only those who have a duty to perform under the law in the premises should be made parties respondent.    There is no merit in the contention that the duties of the inspectors and clerks cannot be performed at the court house of the county where the ballot boxes are kept under the statute.    A previous demand for the performance of the duty was unnecessary, as the duty is a· public one.   See County Commissioners Columbia County v. King, 13 Fla. 451.

Quo warranto is used to contest the right to an office, not to test the accuracy of the count and return of a nominating election.   This writ of mandamus is used not to change or vary the number of votes cast, but to require officers to perform the ministerial duty to ascertain and return with accuracy the number of votes as actually cast.

The secrecy of the ballot is not invaded by a proper and accurate count any more than it is by an erroneous count.   Under the law the ballots are not marked so as to be identified.   The probative force, or the effect of the count and return made under this writ is not determined by the performance of the ministerial statutory duty required by the writ.   For this reason alone the other candidate for the nomination is not a necessary or even a proper party, since he has no duty to perform in the premises and his rights are not affected by an accurate count and return of the votes as actually cast.   No fraud is alleged against the respondents, and without an allegation it may be assumed "that the ballot boxes were properly sealed and returned by respondents," since that was their statutory duty.   The allegations of the alternative writ admitted by the demurrer indicate that the ballot boxes and their contents have been "carefully. preserved" by the Supervisor of Registration as required by the statute.

Section 55, Chapter 6469, as amended by Section 9, Chapter 6874, provides that "all contests over the results of a primary election shall be determined according to the law applicable to like contests over the results of a general election.

"The County Canvassing Board are hereby declared to be the proper parties defendant in all matters affecting the accuracy of the election returns."

These enactments clearly recognize the use of judicial

writs in "contests over the results of a general election," and contemplate that similar judicial proceedings shall be had in "all contests over the results of a primary election," at least "in all matters affecting the accuracy of the election returns" in a primary election. The ministerial legal duty of election officers to make true and proper counts and returns of election may under the common law adopted by statute in this State be enforced by mandamus. And such writ has been so used in this State before the enactment of the primary law. This consideration assists in ascertaining the legislative intent in enacting Section 9 of Chapter 6874, above quoted.

In confining the county canvassing board to the precinct returns, and in making no special provision for the county canvassing board or other officers to determine any alleged errors and inaccuracies in the count made by the precinct officers, the Legislature clearly left such matters to the courts whose jurisdiction attaches in the absence of an excluding law.

The provision of the statute that "the county canvassing board are hereby declared to be the proper parties defendant in all matters affecting the accuracy of the election returns," does not so change the law of mandamus or the rules of law as to parties to litigation or the provisions of Section 46, Chapter 6969, forbidding the County Canvassing Board to "change or vary in any manner the number of votes cast * * * as shown by the returns of the inspectors," as to make the County Canvassing Board the only defendants in a writ of mandamus commanding an accurate count of the ballots cast at an election.

The suggestion that the inspectors and clerks may not voluntarily perform the act commanded by the writ because the ballots are in a sealed box, which is by law in

the custody of the Supervisor of Registration, does not exclude mandamus any more than if the ballots were secured from access by a lock that could not be opened by the inspectors and clerk. And if the writ of mandamus can be made effective to give access to the box by requiring the custodian of the box, who is a defendant in the writ, to permit proper access, the respondents cannot avoid performance of the continuing duty imposed upon them by law of correctly counting and returning the ballots as cast, when access to them is afforded by virtue of the writ. This is not a case where the duty commanded is impossible of performance as in State *ex rel.* Bisbee, Jr. v. Inspectors of Election at Precinct No. 4 of Madison County, 17 Fla. 26; State *ex rel.* Dixon v. Trustees of the Internal Improvement Fund, 20 Fla. 402; Silvers v. State, 68 Fla. 368, 67 South. Rep. 143. Nor does the writ require an unlawful act as in County Commissioners of Columbia County v. King, 13 Fla. 451; State *ex rel.* Walker v. Stewart, 49 Fla. 259, 38 South. Rep. 600.

In State *ex rel.* Bisbee, Jr. v. Inspectors of Election at Precinct No. 4 of Madison County, *supra,* a peremptory writ of mandamus was denied because the writ would be fruitless, the returns having been made "in due form" under the law, but was stolen from a messenger by whom they were being taken to the proper officer, and the inspectors had no memoranda of the vote cast from which to make other returns.

In Cawthon v. State *ex rel.* Adams, 62 Fla. 133, 56 South. Rep. 404, it appeared that a court of chancery was a more appropriate and proper form. In Dixon v. Trustees of Internal Improvement Fund, *supra,* the trustees having already conveyed the land, mandamus to convey to another party was refused, the real controversy being between purchasers of land. Likewise in State *ex rel.*

Sunday v Richards, 50 Fla. 284, 39 South. Rep. 152, adverse claims to land were involved and there was a remedy otherwise provided by law.

The demurrer to the alternative writ and the motion to quash the alternative writ are overruled.

Upon the argument on the demurrer and motion to quash the alternative writ on August 1st, counsel for the respondents asked the court to allow them ten days from that date in which to submit to the court a return to the writ in the event the demurrer and motion should be overruled; it is ordered, therefore, that the respondents be allowed until August 11th in which to submit any issue of fact on which the command of the alternative writ ought not to be made peremptory.

TAYLOR, C. J., and SHACKLEFORD, COCKRELL, WHITFIELD and ELLIS, JJ., concur.