CHESTER M. WIGGINS, County Judge, et al., as and constituting the County Canvassing Board of Elections of Polk County, Florida, et al., *Plaintiffs in Error*, vs. THE STATE OF FLORIDA, Ex Relator H. J. DRANE, *Defendant in Error*.

144 So. 62.

Division A.

Opinion filed September 27, 1932.

Petition for rehearing denied October 3, 1932.

*Don Register, R. B. Huffaker, Edwards & Harris, B. G. Langston, A. R. Carver, Frank Hursey* and *Laurie Tomlinson,* for Plaintiffs in Error;

*Dickenson & Lake* and *Ed. R. Bentley,* for Defendant in Error.

PER CURIAM.—The judgment of the Circuit Court is affirmed on authority of the opinion and judgment in the case of John Whitehurst, County Judge, et al., as and constituting the County Canvassing Board of Elections, et al., vs. State of Florida, ex rel. H. J. Drane, this day filed, and authorities therein cited.

Affirmed.

BUFORD, C.J., AND ELLIS AND BROWN, J.J., concur.

WHITFIELD, P.J., AND TERRELL, J., concur in the opinion and judgment.

DAVIS, J., absent from oral argument, not participating.

---

ON PETITION FOR REHEARING.

BUFORD, C.J.—This cause comes before us on petition for

rehearing and it appears that there is confusion as to the meaning of the command of the Alternative Writ, a part of which is quoted in the original opinion filed herein on September 27, 1932.

In the case of Nuccio vs. Williams, 97 Fla. 159, 120 Sou. 310, we said:

"It is the duty of the inspectors and clerks in election districts to correctly and accurately count, tabulate and make due return of all the votes and ballots cast at an election; and in performing such duty the inspectors may in some cases of ambiguity or apparent uncertainty determine *from the face of the ballots as cast,* the person for whom a vote was intended by the voter (see State ex rel. v. Deane, 23 Fla. 121, 1 So. R. 698, 11 Am. R. 343); but where there is no uncertainty or ambiguity in the name voted for or in the method used on the ballot to indicate the name voted for, the inspectors should count and return the vote and ballot as cast whatever may be the name or the mark used, the legality of the vote being for judicial determination if duly presented in appropriate proceedings. See State ex rel. v. Anderson, 26 Fla. 240, 8 So. R. 1. Where the statutes require a vote to be cast in a certain way, as by placing an X mark to the left of or *before* the name of the person intended to be voted for, the statute should be substantially complied with or the vote should not be counted among the votes that are properly cast. What is a substantial compliance with the requirement of the statute is ultimately a judicial question. Where a ballot contains an X mark after a name on the ballot when the statute requires the X mark to be placed before the name, or when there is a mark that has no semblance of an X mark before a name on a ballot such irregular votes should be separately counted, tabulated and returned, and the ballots should be duly preserved subject to judicial procedure in which the courts may determine whether the vote so irregularly cast should be counted with those that were properly and regularly cast."

A separate tabulation and return of what may be

deemed regular ballots does not mean that only regular ballots are to be counted; if the marking of the ballot should be irregular, but the voter casting such ballot has clearly indicated by an X mark the candidate of his choice, the ballot should be counted as intended.

Only ballots where the voter has indicated his choice by the use of an X mark, that is by a cross mark of some character, should be counted. The use of any other mark than a cross mark could be used as the vehicle of fraud and identification of the ballot. Therefore, we hold that the provision of the statute which requires the use of a cross mark to indicate the choice of the voter is mandatory. Neither will the fact that a voter has placed his cross marks opposite the names of two candidates where only one is to be nominated vitiate the ballot as it applies to other candidates properly voted for.

The statute governing the primary elections as amended by chapter 13761, Acts of 1929, prescribes the form of ballot, which form indicates that the mark of the voter is to be placed on the right side of the ballot, but, there is nothing in the statute which mandatorily requires the mark indicating the choice of the voter to be placed on one side or the other of such ballot.

Section 362 R. G. S., 420 C. G. L., provides:

"The primary election required by this article, except as herein otherwise provided, shall be held in accordance with the provisions of Article 1, Chapter 1, of Title 4, First Division of these Compiled General Laws."

Section 331 of such Compiled General Laws provides in part:

"On receiving the ballot the elector shall forthwith and without leaving the polling place, retire alone to one of the booths or compartments provided for that purpose, and there prepare his ballot by marking

with pen and ink or pencil, in the appropriate margin or place a cross mark (X) before the name of the candidate of his choice for each office to be filled, or by filling in the name of the candidate of his choice in the blank space provided therefor, and marking the cross mark (X) in the appropriate margin," * * *

Therefore, the indicating of the choice of the voter must be done by the use of the cross mark, but, as there is conflict between the implied requirement that the cross mark be placed on the right side of the ballot in primary elections and the requirement in terms that such mark be placed "before the name of the candidate of his choice," in general elections, we hold that a primary ballot should be counted if the cross mark is placed either on the right or the left of the name of the candidate, so as to clearly indicate the choice of the voter, and, although ballots in primary elections, to be entirely regular, must be marked on the right side, as is indicated by the form of the ballot in the statute, those marked on the left, though being irregular, should be counted and returned separately as valid votes. Ballots marked otherwise should be tabulated and returned separately but not counted for any candidate.

The Alternative Writ refers to "the square provided on the ballot at the right of the name of the candidate." The word "square" must be construed to mean that space immediately to the right or left of the name of the candidate which may be used by the voter for placing the mark indicating his choice and not in its technical sense a square space enclosed by straight lines.

The question as to whether or not the ballot boxes, and the contents thereof, are in the same condition in which they were at the time they were delivered to the proper custodian is not finally determined by the holding of the Circuit Judge at the hearing in response to the Alternative Writ, but is only determined by that

judgment for the purpose of determining the right to a recount and if the evidence which may be discovered upon the opening of the boxes warrants some other judgment in that regard it may be entered then.

Having made this explanation and clarification of what is intended to be required by the terms of the Writ, motion for rehearing is denied.

WHITFIELD, TERRELL AND BROWN, J.J., concur.

DAVIS, J., concurs in part.

DAVIS, J. (Concurring in part with BUFORD, C.J.)—I concur with MR. CHIEF JUSTICE BUFORD in all that is said in the opinion written by him disposing of the petition for rehearing, except what is said in next to the last paragraph where it is stated: ''The question as to whether or not the ballot boxes, and the contents thereof, are in the same condition in which they were at the time they were delivered to the proper custodian is not finally determined by the holding of the Circuit Judge,'' etc.

My understanding of the law, as construed in the past by this Court is, that in primary election cases the writ of mandamus is granted by the Courts to enforce the performance of a ministerial duty imposed by law upon the inspectors of election where such duty has not been performed *as the law requires* (State ex rel. Knott v. Haskell, 72 Fla. 176, 72 Sou. Rep. 651), and not for the purpose of having a recount *per se*. In the case just cited, this Court held that the ministerial duty imposed by law on precinct election officers to make a correct count of the votes as cast in a primary election held under the statute is a continuing duty and that mistakes made by such officers in counting and returning the votes as cast may be corrected in mandamus proceeding duly taken in proper cases. The writ when issued merely commands the accurate returns that the law requires of the inspect-

ors of election as ministerial officers. State ex rel. Knott v. Haskell, *supra*, 19th headnote.

The duty imposed upon the inspectors of an election to make the accurate return that the law requires is mandatory and is required to be performed regardless of whether the result of the election as erroneously arrived at by an irregular count and return will be changed or not. In fact the theory of the proposition is that by the writ of mandamus there is required to be performed by the inspectors of an election the unperformed continuing duty which became an obligation upon them to perform immediately upon the close of the polls on election day and at a time when the result of the election in the County, District or State would necessarily be unknown to the inspectors of election, and if known would be utterly immaterial as an authorization to them not to proceed according to law. It has therefore been held by this Court that upon a proper showing the relator is entitled to an effective writ, irrespective of any showing that the performance of the writ when issued will change the result of the election. State ex rel. Nuccio v. Williams, 97 Fla. 159, 120 Sou. Rep. 310.

The legal predicate for the issuance of a writ of mandamus to have a recount is therefore that there is an unperformed duty mandatory in its character and continuous in nature until performed, which requires election inspectors to make a correct count and proper return of the votes cast, regardless of what may be the result, and that until this duty is performed according to law there is no *legal* result, although some *de facto* result may have been arrived at and declared on the basis of irregular count or improper return.

If what I have just said is the correct theory, then it follows (as has been held by this Court in the previous cases) that all that is necessary to be alleged and proved

in a mandamus case seeking a recount of votes cast in a primary election is that irregularities in the count and declaration of the result have occurred, or that a correct count and return have not been made in the manner or according to the form provided by law, and that relator as a candidate for office, having an interest in the performance of duties imposed upon inspectors of election, asserts the right to have that duty performed in the manner and according to the form in which the law says it shall be performed.

But I do not understand it to be the law as declared in our previous decisions that the writ of mandamus can be invoked to have a recount *per se* merely by filing a petition for the writ asking for such recount. The predicate for the issuance of the writ being non-performance of a continuing legal duty, it must be in every case alleged and, if denied, must be proved in a mandamus case seeking a recount of the votes that some part of the statutory duty of the inspectors of election has not been performed according to law, and that therefore a writ of mandamus should issue to require the performance of such unperformed continuing duty which can only be executed by requiring the inspectors to reassemble, reopen the ballot boxes, and to proceed to a recount under the direct judicial supervision of the Court issuing the writ of mandamus.

From what has been said, it follows that the respondent inspectors of an election may take issue with any charges of non-performance of duty made against them by the alternative writ. See State vs. Haskell, 72 Fla. text 249. They may also assert as a matter of defense for refusing to comply with the commands of an alternative writ that conditions have so changed that it would be impossible for them to comply with the commands of an alternative writ to have a recount. Thus in

State ex rel. Knott v. Haskell, supra, this court held (see 11th headnote) that where ballot boxes, ballots, etc., used in a primary election are carefully preserved as required by the statute, the inspectors and clerk in an election district cannot avoid obedience to a judicial writ requiring them to accurately count and return the ballots as cast when such writ gives the inspectors and clerk access to the ballot box, ballots, etc., that have been properly kept as required by law through the legal custodian who is a defendant in the writ.

If the inspectors of an election return, in response to an alternative writ of mandamus seeking a recount, answer that they have fully performed the duties imposed upon them and have *accounted for* each and every ballot delivered to them and cast, the court must determine by taking competent evidence whether or not such return if an excuse for refusal to obey the commands of the alternative writ, is to be sustained as a matter of proof. See State vs. Haskell, 72 Fla. text 249 supra. That the inspectors have breached their duty in the premises so as.to require a recount may be shown by evidence on the relator's part to the effect that the statutory procedure for counting and tallying the votes was not followed; that known votes claimed to be illegal were accepted by the inspectors, or that known legal votes were rejected by them; that the inspectors allowed unauthorized parties to assist in the count and tally, or that all the votes *have not been accounted for in the returns,* either as being counted or rejected, etc. Under the law, as I understand it, all such matters when put in issue by appropriate pleadings, must be heard and determined by the court before a peremptory writ issues, and after a peremptory writ has issued, the finding of the court is *res adjudicata* and cannot be inquired into except through appellate proceedings.

Another defense admissible to the respondent inspectors is that such inspectors *cannot* in response to the alternative writ make another count and tally of the votes, even though their first count was irregularly or illegally made. Such defense may be properly termed a plea or answer of impossibility of performance, which is always permissible in a mandamus proceeding. Such plea would normally be based upon some allegation by the respondents that they should not be directed to obey the commands of the alternative writ because the ballot boxes are not in the same condition that they were when they left the hands of the inspectors, or that they have been tampered with, lost, destroyed or otherwise had their sanctity as evidence destroyed. See State ex rel. Disbee vs. Inspectors, 17 Fla. 26. But this plea is also a plea which must be made before the peremptory writ is ordered, because when the inspectors of an election are served with an alternative writ of mandamus giving them access to the ballot boxes and requiring a recount and new return by them, it is their duty under the law to examine the ballot box to which the writ gives them access and from such examination determine for themselves whether or not such changes have taken place in it as renders it *impossible* for them to perform the commands of the alternative writ to make a recount. Such examination by the inspectors may be made in the presence of or under the direct supervision of the court before whom a return to alternative writ is filed by the inspectors. But in any event the question of whether or not the ballot box and ballots have been carefully preserved goes only to the proposition of whether or not the inspectors have an excuse for refusing to comply with the commands of the alternative writ on the ground of impossibility of performance. That question also, like other matters of defense which would defeat a recount, must be asserted

by the inspectors of the election before a peremptory writ for a recount is ordered, because after the peremptory writ there is no excusè for non-performance of its commands on the ground that the ballot box is not intact, etc. The alternative writ must give the inspectors access to the ballot box and having such access to it they must then and there, before making any return to the alternative writ, determine whether or not the ballot box and ballots are intact, so that they can make a recount. If they fail to take advantage of such right of defense before a peremptory writ has been ordered, I am unable to perceive of any theory of the law which will permit such defense to be asserted as an excuse for non-performance of a peremptory writ of mandamus requiring them to make a recount. This Court has repeatedly held that the only return permissible to a *peremptory* writ of mandamus is that of obedience and performance of the commands of the peremptory writ. See State v. McLin, 16 Fla. 17; State v. County Canvassers, 17 Fla. 9; State v. Florida Coast Line Canal Co., 73 Fla. 1006, 75 Sou. Rep. 582.

The likelihood of any change in the condition of the ballot box and ballots from the time the inspectors may have first examined it as a basis for making their return to an alternative writ can be avoided by an order of the Court placing such ballots and ballot boxes in judicial custody, so safeguarded thereby as to make any change in condition impossible after the inspectors have satisfied themselves by an examination of the ballot box that it is intact at the time they make their return to an alternative writ of mandamus. If the inspectors of election, who are respondents to an alternative writ of mandamus, fail to have such ballot boxes impounded by order of the Court to preserve their integrity and permit a peremptory writ to pass against them ordering a

recount, I do not see how the usual rules of procedure in mandamus cases can be legally modified in cases like this to permit the inspectors to come into Court after a peremptory writ is issued and do what is permitted in response to no other peremptory writ of mandamus, that is, make a showing of impossibility of performance of the commands of the *peremptory writ*. All questions of impossibility of performance, right to refuse to perform, etc., are deemed conclusively settled by the judgment awarding the peremptory writ in ordinary mandamus cases and I am unable to find any exception which would alter this rule with respect to election recount cases in mandamus.

However, I do not mean to say that where a peremptory writ has been ordered to issue and it is later ascertained that new facts have arisen and other circumstances occurred which would render performance of the commands of a peremptory writ of mandamus likely to result in a miscarriage of justice, that there is no remedy for such a case. On the contrary, this Court in State ex rel. Davis, Atty.-Gen. v. A. C. L. R. R. Co., 103 Fla. 1204, 140 Sou. Rep. 824, has sustained the right of respondents to a peremptory writ of mandamus to make an *extraordinary* motion to stay or arrest the *execution* of the peremptory writ for good cause, which has arisen subsequent to the time the peremptory writ was ordered.

But like all *extraordinary* proceedings, a motion asking for the stay or arrest of an execution of a peremptory writ of mandamus, should not be entertained as a matter of right, but sparingly allowed only as a matter of urgent necessity requiring the exercise of the court's discretion to stay or arrest execution of its own writs when indispensable to prevent a miscarriage of justice.

For the foregoing reasons I therefore cannot agree with the paragraph of the opinion of MR. CHIEF JUS-

TICE BUFORD above referred to. In this case peremptory writ has issued after a trial of all matters and issues of fact raised by the pleadings. The respondents against whom the peremptory writ of mandamus has issued, would have no right to raise new issues upon remand of the cause to the court below as an excuse for not performing the commands of the peremptory writ, because this Court has repeatedly held that the only permissible return to a peremptory writ of mandamus is that of performance of its commands. State v. McLin, 16 Fla. 17, and cases cited *supra*.

But in all other respects I concur fully in the opinion on rehearing which has been prepared by MR. CHIEF JUSTICE BUFORD to express the views of this Court as to the rule to be followed in the counting and tallying of the votes.

TERRELL, J., concurs.