The Honorable Charles E. Burton Chair, Palm Beach County Canvassing Board County Courthouse West Palm Beach, Florida 33401
Dear Judge Burton:
On behalf of the Palm Beach County Canvassing Board, you have asked this office's opinion as to the meaning of "error in voting tabulation which could affect the outcome of" an election as that phrase is used in section 102.166(5), Florida Statutes.
I am answering your request fully mindful that just yesterday the Division of Elections rendered Division of Elections Opinion 00-11 to the Chairman of the Republican Party, interpreting the duties of a county canvassing board pursuant to section 102.166(5), Florida Statutes.[1] Because the Division of Elections opinion is so clearly at variance with the existing Florida statutes and case law, and because of the immediate impact this erroneous opinion could have on the on-going recount process, I am issuing this advisory opinion.
Section 102.166(4), Florida Statutes, permits a local canvassing board, upon request of a candidate or political party, to authorize a manual recount to include at least three precincts and at least 1 percent of the total votes cast for such candidate.[2]
Section 102.166(5), Florida Statutes, provides "[i]f the manual recount indicates an error in vote tabulation which could affect the outcome of the election, the county canvassing board shall" among other options, manually recount all ballots.
Division of Election Opinion 00-11 concludes that the language "error in the vote tabulation" in section 102.166(5), Florida Statutes, refers only to a counting error in the vote tabulation system. The opinion concludes that the inability of a voting system to read an "improperly marked marksense or improperly punched punchcard ballot" is not an "error in the voter tabulation system" and would not, therefore, trigger a recount of all ballots.
The division's opinion is wrong in several respects.
The opinion ignores the plain language of the statute which refers not to an error in the vote tabulation system but to an error in the vote tabulation. The Legislature has used the terms "vote tabulation system" and "automatic tabulating equipment" elsewhere in section 102.166, Florida Statutes, when it intended to refer to the system rather than the vote count. Yet the division, by reading "vote tabulation" and "vote tabulation system" as synonymous, blurs the distinctions that the Legislature clearly delineated in section 102.166.[3]
The error in vote tabulation might be caused by a mechanical malfunction in the operation of the vote counting system, but the error might also result from the failure of a properly functioning mechanical system to discern the choices of the voters as revealed by the ballots. The fact that both possibilities are contemplated is evidenced by section 102.166(7) and (8), Florida Statutes. While subsection (8) addresses verification of tabulation software, subsection (7) provides procedures for an examination of the ballot by the canvassing board and counting teams to determine the voter's intent.
The division's opinion, without authority or support, effectively nullifies the language of section 102.166(7), Florida Statutes. Nothing in subsection (7) limits its application to the recount of all ballots. Rather, the procedures for a manual recount in subsection (7) equally apply to the initial sampling manual recount authorized in section 102.166(4)(d). Section 102.166(7)(b) states:
If a counting team is unable to determine a voter's intent in casting a ballot, the ballot shall be presented to the county canvassing board for it to determine the voter's intent.
Yet under the division's interpretation, such language is rendered superfluous. It is fundamental principle of statutory construction that statutory language is not to be assumed to be surplusage; rather a statute is to be construed to give meaning to all words and phrases contained within statute.[4]
Section 102.166(7) clearly recognizes that an examination by a person of the ballot will occur to determine whether the voter complied with the statutory requirement, i.e., marked the marksense or punched the punchcard ballot. The statutes do not specify how a punchcard must be punched. Clearly, there may be instances where a punchcard or marksense ballot was not punched or marked in a manner in which the electronic or electromechanical equipment was able to read the ballot. Such a deficiency in the equipment in no way compromises the voter's intent or the canvassing board's ability to review the ballot and determine the voter's intent. In fact, section 101.5614(5) and (6), Florida Statutes, contemplate that such an examination will occur. Section101.5614(6) provides that the ballot will not be counted if it is impossible to determine the elector's choice or the elector marks more than one name than there are persons to be elected.
Clearly, the manual count of the sampling precincts which reveals a discrepancy between votes counted by the automatic tabulating equipment and valid ballots which were not properly read by the equipment but which constitute ballots in which the voter complied with the statutory requirements and in which the voter's intent may be ascertained, constitutes an "error in vote tabulation." If the error is sufficient that it could affect the outcome of the election, then a manual recount of all ballots may be ordered by the county canvassing board.
The division's opinion fails to acknowledge the longstanding case law in Florida which has held that the intent of the voters as shown by their ballots should be given effect. Where a ballot is marked so as to plainly indicate the voter's choice and intent, it should be counted as marked unless some positive provision of law would be violated.[5]
As the state has moved toward electronic voting, nothing in this evolution has diminished the standards first articulated in such decisions as State ex rel. Smith v. Anderson[6] and State ex rel.Nuccio v. Williams[7] that the intent of the voter is of paramount concern and should be given effect if the voter has complied with the statutory requirement and that intent may be determined. For example, if a voter has clearly, physically penetrated a punchcard ballot, the canvassing board has the authority to determine that the voter's intention is clearly expressed even though such puncture is not sufficient to be read by automatic tabulating equipment.
In State ex rel. Carpenter v. Barber,[8] the Court stated:
"The intention of the voter should be ascertained from a study of the ballot and the vote counted, if the will and intention of the voter can be determined, even though the cross mark `X' appears before or after the name of said candidate. See, Wiggins, Co.Judge, v. State ex rel. Drane, 106 Fla. 793, 144 So. 62; Nuccio v.Williams, 97 Fla. 159, 120 So. 310; State ex rel. Knott v.Haskell, 72 Fla. 176, 72 So. 651."
The Florida Statutes contemplate that where electronic or electromechanical voting systems are used, no vote is to be declared invalid or void if there is a clear indication of the intent of the voter as determined by the county canvassing board.[9]
In light of the plain language of section 102.166(5), Florida Statutes, authorizing a manual recount of all ballots when the sampling manual recount indicates an error in vote tabulation which could affect the outcome of the election and the general principles of election law, I must express my disagreement with the conclusions reached in Division of Election Opinion 00-11. Rather I am of the opinion that the term "error in voter tabulation" encompasses a discrepancy between the number of votes determined by a voter tabulation system and the number of votes determined by a manual count of a sampling of precincts pursuant to section 102.166(4), Florida Statutes.
Sincerely,
Robert A. Butterworth Attorney General
RAB/t
[1] The validity of the opinion of the Division of Elections is questionable since it appears to exceed the authority granted to the division by Florida law. Section 106.23(2), Florida Statutes, provides the division with the authority to render advisory opinions interpreting the election code to, among others, a political party relating to actions such party has taken or proposes to take. Division of Elections Opinion 00-11, however, erroneously seeks to advise a political party about the responsibilities of the supervisor of elections and local canvassing board under section 102.166(5).
[2] See, s. 102.166(4)(d), Fla. Stat., stating that the person requesting the recount "shall choose three precincts to be recounted."
[3] See, e.g., Department of Professional Regulation, Board ofMedical Examiners v. Durrani, 455 So.2d 515 (Fla. 1st DCA 1984) (legislative use of different terms in different portions of same statute is strong evidence that different meanings were intended).
[4] See, Terrinoni v. Westward Ho!, 418 So.2d 1143 (Fla. 1st DCA 1982); Pinellas County v. Woolley, 189 So.2d 217 (Fla. 2d DCA 1966); Ops. Att'y Gen. Fla. 95-27 (1995); 91-16 (1991) (operative language in a statute may not be regarded as surplusage); 91-11 (1991) (statute must be construed so as to give meaning to all words and phrases contained within that statute).
[5] See, State ex rel. Smith v. Anderson, 8 So. 1 (Fla. 1890);Darby v. State, 75 So. 411 (Fla. 1917); State ex rel. Nuccio v.Williams, 120 So. 310 (Fla. 1929) (in performing their duty of counting, tabulating, and making due return of ballots cast in an election, the inspectors may, in some cases of ambiguity or apparent uncertainty in the name voted for, determine, from the fact of the ballot as cast, the person for whom a vote was intended by the voter).
[6] 8 So. 1 (Fla. 1890).
[7] 120 So. 310 (Fla. 1929).
[8] 198 So. 49, 51 (Fla. 1940).
[9] See, Wiggins v. State ex rel. Drane, 144 So. 62, 63 (Fla. 1932) (separate tabulation and return of what may be deemed regular ballots does not mean that only regular ballots are to be counted; if the marking of the ballot should be irregular, but the voter casting such ballot has clearly indicated by an X-mark the candidate of his choice, the ballot should be counted as intended).